**HODGMAN et al. v. ATLANTIC REFINING CO. et al.**

(District Court, D. Delaware. December 16, 1924.)

No. 452.

1. **Corporations** ⬤174—**Stockholder's rights defined by law and charter and not affected by contract.**

The rights of a stockholder in a Delaware corporation are to be determined as matter of law from the Constitution and laws of Delaware and the charter of the corporation, and cannot be increased, diminished, or otherwise altered by a contract between the corporation and the person to whom the shares are issued.

2. **Evidence** ⬤142(1)—**In stockholder's action to recover value of stock, evidence of other sales competent on question of value.**

In an action by a stockholder in behalf of the corporation to recover the value of stock fraudulently acquired by another for less than its market price, evidence of the price paid for shares issued and sold at the same time to others was competent on question of value.

3. **Evidence** ⬤113(4)—**In stockholder's action to recover value of stock fraudulently acquired at less than market prices, contract held immaterial on question of value.**

In an action by a stockholder in behalf of corporation to recover from another company value of stock fraudulently acquired by defendant at less than market value, a contract between the companies whereby defendant was to deposit shares acquired and perform certain agreements *held* not sufficient consideration for the stock, nor to constitute payment therefor, and not material on the question of plaintiff's recovery.

In Equity. Suit by Marshall Hodgman and others against the Atlantic Refining Company and the Superior Oil Corporation, removed from state court. On motion of defendant Atlantic Refining Company, after decree for plaintiffs (300 F. 590), leave was granted to offer proof of amount of damages. Proffered evidence rejected. Decree for plaintiffs.

See, also, 274 F. 104.

Andrew C. Gray (of Ward, Gray & Neary), and E. Ennalls Berl, both of Wilmington, Del., Arthur Berenson, of Boston, Mass., and Lawrence Berenson, of New York City, for plaintiffs.

Robert H. Richards, of Wilmington, Del., Ira Jewell Williams and Yale L. Schekter, both of Philadelphia, Pa., for defendant Atlantic Refining Co.

Charles F. Curley, of Wilmington, Del., for the defendant Superior Oil Corporation.

MORRIS, District Judge. After the filing of the opinion in this cause the Atlantic Refining Company moved for leave to make offers of proof solely as affecting the amount of damages for which a decree should be entered. The motion was granted. Thereupon the Refining Company, contending that it had agreed with the Superior to deposit and had deposited its shares under a deposit agreement while the bankers had done neither, offered to prove that shares so deposited were, by reason of their being so deposited, wholly unlike shares not so deposited. By reason of such asserted dissimilarity, which it offers to prove, the refining company asserts that the price at which the stock was sold to the bankers is not an evidence of the fair market value of the shares acquired by the Refining Company; that there is no other evidence in the record or available by which to establish a market value for the shares acquired by the Refining Company, and that consequently the only measure of damages applicable to the case is the difference between what the Refining Company paid for the shares acquired by it and their intrinsic value. The

Refining Company offers to prove what the intrinsic value of such shares was.

[1, 2] I think, however, that the premises from which the Refining Company would draw the conclusion that the price paid by the bankers is not a fair criterion of the market value of the shares acquired by the Refining Company, and consequently would obtain an order for the admission of evidence to establish the intrinsic value of the assets of the Superior Company, and thereby the intrinsic value of the shares acquired by the Refining Company are not sound. The rights conferred by stock ownership in a Delaware corporation are to be determined as a matter of law from the Constitution and the laws of the state of Delaware and the charter of the company. Those rights cannot be increased, diminished, or otherwise altered by a contract between the corporation and the person to whom the shares are issued. The bankers and the Refining Company each received shares of the same kind and class. Hence the shares issued by the Superior to the Refining Company were in all respects identical with the shares issued by the Superior to the bankers. It follows that the price paid by the bankers is proper evidence of the value of like shares of the Superior Company issued at the same time to the Refining Company.

[3] But it is asserted by the Refining Company that by a simultaneous oral contract the Refining Company promised the Superior to deposit under a deposit agreement the shares of Superior stock issued to the Refining Company; that this promise was carried out, and that thereby the Superior is prevented from recovering the established value of the shares of its stock issued to the Refining Company. The documentary evidence fails to make mention of any contract of that character between the Refining Company and the Superior, and I think the existence of such a contract has not been established. But let it be assumed that such contract was made. Shares of stock of a Delaware corporation may not be issued therefor. Such a contract cannot constitute payment for shares of stock in a Delaware corporation. Wallace v. Weinstein, 257 F. 625, 168 C. C. A. 575 (C. C. A. 3); Cooney v. Arlington Hotel Co., 11 Del. Ch. 286, 101 A. 879, and on appeal 11 Del. Ch. 432, 106 A. 39; Scully v. Automobile Finance Co., 12 Del. Ch. 174, 109 A. 49; Bowen v. Imperial Theatres (Del. Ch.) 115 A. 918. Yet, if the contention of the Refining Company is sound, such a contract, though it may not be accepted as full payment for shares of stock, may nevertheless be accepted in part payment therefor. If the contention of the Refining Company is sound, the law would permit the accomplishment by indirection of that whose direct consummation is prohibited. If such a contract was made and a consideration other than a diminution in the price of the shares issued to the Refining Company passed from the Superior to the Refining Company therefor, the Refining Company has been paid, and should not by a reduction of damages be paid twice. If the Refining Company has not been paid such other consideration, it could, in my opinion, recover the amount thereof in this suit only upon a counterclaim. If there was no consideration for such contract other than the issuance of the stock to it for a diminished price, I think the contract invalid for want of consideration. But let us go a step further. If the asserted contract was made and carried out, it was carried out only by means of the deposit agreement made as of August 9, 1920, and appearing as a part of Plaintiffs' Exhibit No. 40. The Refining Company did not by that agreement tie up its stock absolutely for any definite time, as the Refining Company contends that it agreed with the Superior to do. On the contrary, the following paragraphs of the deposit agreement disclose that the Refining Company deposited its stock with its own agent, and with it only on the condition that the Refining Company could at its own discretion withdraw its stock if at any time its nominees should not constitute a majority of the board of directors of the Superior:

"Fifth. Stock deposited hereunder shall stand in the name of the depositary as agent for the Atlantic Company, but the Atlantic Company may cause the certificates representing such stock to be transferred to the name of any other corporation or individual. Until the actual delivery by the depositary of stock certificates in exchange for deposit certificates hereunder, or until the termination of this agreement, the Atlantic Company or its nominees shall be entitled to exercise all rights and powers of absolute owners in respect of any and all stock deposited hereunder, including the right to vote thereon, subject, however, to the terms and conditions of this agreement. If at any time the nominees of the Atlantic Company shall not constitute a majority of the board of directors of the corporation, or any successor corporation, the Atlantic Company reserves the right in its discretion to cause all or any part of the shares it may control or be entitled to upon the execution of this agreement to be transferred to its own name

or the name of its nominee or nominees, and such shares shall thereafter be free from all restrictions or obligations imposed by this agreement."

"Seventh. Depositing stockholders' agree, each one with the other to, from time to time, upon receipt of notice in writing of any proposed meetings of the stockholders of the corporation at which directors of the corporation are to be elected by ballot among the stockholders, instruct the Atlantic Company to vote for such directors as may be nominated by the Atlantic Company, and in the event that any depositing stockholder shall fail to so instruct the Atlantic Company, the Atlantic Company shall vote the stock of such depositing stockholder so failing to instruct it, for such directors as may be nominated by the Atlantic Company."

"Twelfth. * * * The Atlantic Company may at any time in its discretion appoint in writing another depositary in place of said Columbia Trust Company or of any successor depositary hereunder."

Through the aid of that agreement the Refining Company was enabled to dominate and control with its 325,000 shares a corporation having 954,208 shares of outstanding capital stock. If there was an agreement between the Refining Company and the Superior that the former's stock should be deposited unconditionally for a specified time, that agreement was not carried out. If, on the other hand, the foregoing is the deposit agreement under which the Refining Company asserts it promised the Superior to deposit the stock issued to the Refining Company, expert evidence to show that the value of the Refining Company's shares was lessened by that agreement would be useless and unavailing. Viewed from any aspect, I think the value of the Refining Company's shares is sufficiently established by the price paid by the bankers for like shares, and that evidence of the intrinsic value of the assets of the Superior need not be resorted to. The proffered evidence is rejected.

Let a decree be presented.