HARRY M. BLAIR, GEORGE R. BAKER, WILLIAM F. EDWARDS, C. STEVENSON NEWHALL and J. HAMBLETON OBER, constituting the Preferred Stockholders' Protective Committee of The F. H. Smith Company,

*vs.*

THE F. H. SMITH COMPANY, a corporation of the State of Delaware, G. BRYAN PITTS, individually and as Trustee, SAMUEL J. HENRY, DANIEL R. CRISSINGER, C. ELBERT ANADALE and FREDERICK N. ZIHLMAN.

*New Castle, Aug. 8, 1931.*

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for complainants.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for The F. H. Smith Company.

*David J. Reinhardt, Jr.,* and *J. La Penne Guenveur,* for Henry and Zihlman.

*James F. Malloy,* for Crissinger.

THE CHANCELLOR: The issuance in May, 1928, by the defendant company of fifty thousand shares of common stock to Pitts as trustee, is defended by no one who has appeared to offer testimony. Pitts himself, however, in the answer which was filed before he repudiated the authority of his solicitor to represent him, avers that the fifty thousand shares were issued to him for a valuable consideration. He does not say what the consideration was. The company, according to its answer, knows of no consideration other than that shown in the resolution authorizing the issuance of the stock. The only testimony in the case shows the

resolution to be falsely stated in the minutes in that it empowers Pitts to give the entire fifty thousand shares, with all dividends accumulated thereon, if any, to himself in whole or in part. Pitts is no longer an officer of the company. He is confined in jail. None of the fifty thousand shares was ever distributed to any of the employees. The holding of the shares by Pitts is in behalf of the company and for its welfare. If Pitts does not choose to come forward and justify his right to hold the stock, it would seem that under the circumstances, it ought to be cancelled. The stockholders who have invested their funds in this company to the extent of over one million dollars would be highly prejudiced if the fifty thousand shares were left in the hands of Pitts under a purported trust whose duration is determinable by him alone, and whose terms are so arbitrary as not only to allow Pitts to name his successor but also to permit him to appropriate all or any part of the shares to himself. The stockholders never authorized the trust which the directors' minutes purport to express. The circumstances surrounding the transaction are such that the shares should be cancelled.

I now direct my attention to the one hundred and fifty thousand shares which were authorized to be issued to Powell, West, Pitts and Henry by the stockholders' resolution of May 12, 1921. The only consideration for that stock was the thirty thousand shares then standing in the names of these four persons, which were to be exchanged for the larger number. The resolution plainly states that fact. Whether, therefore, any consideration whatever underlay the one hundred and fifty thousand shares depends in turn on whether the thirty thousand shares were supported by a consideration. I do not understand it to be controverted that the one hundred and fifty thousand shares must look back for the discovery of the consideration underlying them to the consideration, if any, which was given for the original thirty thousand shares. The whole argument was had on that assumption. I shall proceed on that assumption.

In the view I take of the case, it is unnecessary to discuss whether or not, under the charter of this company, it would be proper for the directors to give one hundred and fifty thousand shares of its no par stock in exchange for thirty thousand shares of the same stock without additional consideration.

The question therefore is narrowed to whether the thirty thousand shares should be cancelled if it were all that is outstanding, because of a lack of lawful consideration. If it should, then so also should the one hundred and fifty thousand shares given in exchange for it.

Before taking up that question, it is pertinent to pause for the purpose of noticing the contention that even if the thirty thousand shares were issued for no lawful consideration, yet the stockholders in their meeting of May 12, 1921, when they authorized the exchange of one hundred and fifty thousand shares for the thirty thousand, ratified and confirmed the validity of the latter. The stockholders there present were, it is true, all the then existing stockholders, and the vote was unanimous. And so, it is contended, all the constituent parts of the corporation, stockholders and directors, then in existence, placed the seal of approval on the thirty thousand shares; wherefore, it is said to follow, they and all stockholders subsequently coming into the corporation are estopped to attack the validity of the thirty thousand shares.

There can, however, be no estoppel based on that ground for the following, if for no other, reason.

It appears that of the thirty thousand shares of common stock present at the meeting, Powell, West, Pitts and Henry held and voted it all; and of the fifteen hundred and eighty preferred shares present, the same four individuals voted five hundred shares in person and two of them voted six hundred and thirty-five shares as proxies, a total of eleven hundred and thirty-five. Thus the beneficiaries of the so-called ratification and approval were the ones who

voted it. There is no showing to the effect that the holders of the six hundred and thirty-five shares that were represented by proxies were notified that such a proposal would be submitted to the meeting. General proxies given to an agent cannot be used by the holder to commit the principals to acts done by the agent for his own aggrandizement so as to estop the principal from complaining thereat, unless the principal was advised of the proposed action in advance and expressly or impliedly approved thereof. *Rice & Hutchins v. Triplex Shoe Co., et al.*, 16 *Del. Ch.* 298, 147 *A.* 317, affirmed 17 *Del. Ch.* 356, 152 *A.* 342, 72 *A. L. R.* 932.

The action of these four men in thus casting the votes that authorized the giving to themselves of one hundred and fifty thousand shares of stock for thirty thousand of the same kind of shares without additional consideration, does not have the effect of estopping the stockholders from objecting to the exchange or from questioning the validity of the original issue of the thirty thousand shares.

I recur now to the question of the consideration for the thirty thousand shares originally issued to Powell, West, Pitts and Henry, as the nominees of the old F. H. Smith Company and its sole owners.

This question assumes three aspects. The first is a question of fact and the other two are questions of law.

As to the question of fact. This has to do with what was the actual consideration for the thirty thousand shares. The resolution of the directors authorizing the issuance of the shares was adopted at the first meeting of the board on June 1, 1920. It is set out in full in the statement of facts *supra*. An offer came from the old F. H. Smith Company to the defendant "to sell such amount of the preferred stock of this company (the defendant) as may be determined, at such price as may be determined, in consideration of the issuance to them (it) of the common stock of this company to the amount of thirty thousand (30,000) shares without par value."

The offer was accepted and the directors authorized the issuance of the stock. The offer was considered by the directors as being one "to sell to this corporation the services herein above described," that is, the services of selling preferred stock.

This is what the official minutes of the corporation show. Yet the attempt is now made to engraft something else upon the consideration. The defendant Henry undertakes to do this. He testified that in addition to the offer of the old company to sell the defendant's preferred stock, it also paid as a consideration for the thirty thousand shares two more things, viz., the loan and investment business it had theretofore conducted, and the experience of the old company in handling the most difficult kind of financing, namely, that of construction loans.

Whether these two so-called additional considerations are good ones and whether they were ever delivered by the offeror, are questions which I shall not stop to discuss. What we are immediately concerned with is whether these two alleged items of consideration may be regarded as having in fact been considered by the directors as entering into the *quid pro quo* underlying the stock. To allow Henry to establish them now as a part of the consideration is to permit him to rewrite the minutes of the directors. He is the only director who has come forward to advance these new items. His suggestion of other and further considerations presents the appearance of afterthoughts conjured up to buttress the weakness of a debatable situation. On the question of whether Henry's account of what composed the consideration may have the effect of extending the scope of the expressed understanding of the directors as found in their resolution, the language of the Supreme Court in this State in *Lofland, et al., v. Cahall, Rec'r.,* 13 *Del. Ch.* 384, 390, 118 *A.* 1, 4, appears to be conclusive. That language is:

"The resolution of the board provided that the stock should be issued for services rendered in *organizing the company and selling stock;* no other service, therefore, can be considered, in determining the immediate question." (Italics by the Supreme Court.)

I conclude then the question of fact regarding the consideration purported to be named for the stock as follows: That it was as set out in the resolution, viz., the selling of the defendant's preferred stock for it. Henry's addenda will be disregarded.

The next question is one of law—was that consideration a lawful one? The services in selling the stock were services to be rendered. If anything is well settled in this State, it is that work and labor to be done does not meet the constitutional requirement of consideration for the issuance of stock. *Constitution, Article* 9, § 3. Future services lack the constitutional quality as a consideration for stock. *Rice & Hutchins v. Triplex Shoe Co.,* 16 *Del. Ch.* 298, 147 *A.* 317; *Triplex Shoe Co. v. Rice & Hutchins,* 17 *Del. Ch.* 356, 152 *A.* 342, 72 *A. L. R.* 932; *Finch v. Warrior Cement Corp.,* 15 *Del. Ch.* 44, 141 *A.* 54; *Cooney v. Arlington Hotel Co.,* 11 *Del. Ch.* 286, 101 *A.* 879; *Scully v. Automobile Finance Co.,* 12 *Del. Ch.* 174, 109 *A.* 49; *Bowen v. Imperial Theatres, Inc.,* 13 *Del. Ch.* 120, 115 *A.* 918.

In *Lofland, et al., v. Cahall, Rec'r., supra,* the Supreme Court of this State held, *inter alia,* that directors of a corporation could not vote stock to themselves in consideration for having sold their company's stock under circumstances that indicated that the sales were but in the course of the directors' duty as such. In the instant case, the substance of the situation was that the directors voted the thirty thousand shares of common stock to themselves in consideration for their future services in selling the company's preferred stock, for the old F. H. Smith Company was but another name for the four directors, who owned it. It is significant that the thirty thousand shares were nominated by the old company to be held in equal portions by its owners. If as held in the *Lofland Case,* directors

could not vote stock to themselves in consideration for past sales, *a fortiori,* would it be forbidden to them to vote stock to themselves in consideration of future sales as here, for the vice of that transaction consists not only in their paying themselves for services that are in the course of a director's duty (there being no unusual circumstances and no disinterested appraiser of their efforts) as in the *Lofland Case, supra,* but it consists further in the fact that in this case the services were to be rendered in the future.

I do not overlook the fact that Henry sold about fifty-two thousand dollars of the preferred stock before the resolution was adopted. He claims that he sold that stock in his role of a representative of the old company and not in his role of a promoter of the defendant. I am unable to follow him in his dual capacities. He is to be regarded as selling the stock as a promoter of the defendant. At the time he sold it, the company for which he now says he was acting was under no contract to sell stock, for the resolution accepting its offer was then over a week in the future. At all events he and his fellow promoters were but the old company by another name. I cannot distinguish between them.

I conclude then that the thirty thousand shares issued to Powell, West, Pitts and Henry were issued for a consideration that lacked the quality of consideration exacted by the *Constitution* of this State, and were therefore issued without consideration.

This brings us to the last question which again is primarily a question of law—namely, do the facts show an estoppel so as to prevent the complainants from securing a decree of cancellation?

I have already indicated that no estoppel can arise by reason of the resolution of May 12, 1921, when one hundred and fifty thousand shares were authorized to be exchanged for thirty thousand shares.

It is contended, however, that when the thirty thous-

and shares were voted to Powell, West, Pitts and Henry, there were no other stockholders, legal or equitable, except the International Association of Machinists and one Lundy, who had subscribed and paid for preferred stock on May 19 and May 24 respectively, the former in the amount of fifty thousand dollars and the latter in the amount of two thousand dollars; and that these two subscribers were fully advised of the circumstances attending the proposed issuance of thirty thousand shares and the consideration that was to be paid therefor. If this be so, argue the solicitors for Henry and Zihlman, then every possible interest in the corporation at the time consented to the transaction, and as they would be estopped from complaining against it, so would their successors in title. But there is no evidence that the complainants are successors in title to holders of any stock that was subscribed for at the time with knowledge on the part of the subscribers that signified such consent. There is therefore no occasion to consider the soundness of the proposition contended for by Henry and Zihlman.

That persons who later buy stock of original issue are at liberty to attack the legality of the issuance of stock that occurred before they bought into the corporation can hardly be questioned in the light of the decisions in this State, even though all the persons who were members of the corporation at the time the allegedly illegal stock was issued unanimously agreed to the issuance. This was distinctly held in *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *A.* 666.

In *Scully v. Automobile Finance Co.*, 12 *Del. Ch.* 174, 109 *A.* 49, relief was likewise afforded on the application of stockholders who later entered the corporation against stock issues which had been unanimously approved by the entire membership of the corporation as it existed at the time of issuance.

Some argument has been made concerning whether the stock involved in this case, if its issuance was without consideration, is void or merely voidable. It makes no dif-

ference in the result how it is regarded in that respect. If it was void, of course cancellation of it is a proper remedy. *Triplex Shoe Co. v. Rice & Hutchins,* Supreme Court of Delaware, on appeal from Court of Chancery, 16 *Del. Ch.* 298, 147 *A.* 317, 17 *Del. Ch.* 356, 152 *A.* 342, 72 *A. L. R.* 932. If it was merely voidable, then that form of relief is to be adopted which would seem to be most in accord with all the equities of the case. Such is the effect of the Delaware cases. For instance, in the *Scully Case, supra,* the Chancellor concluded that the equitable thing to do was to allow the stock issued without consideration to stand and to require proper notations to be made on the certificates evidencing it to show the amount that was left unpaid upon it; while in the *Penn Beef Case, supra,* he ordered it cancelled entirely.

Taking the view most favorable to the defendants, viz., that the thirty thousand shares (or their substitute, the one hundred and fifty thousand shares) are merely voidable, whether under all the facts and circumstances justice to the corporation and its large body of stockholders who contributed the only money the corporation ever received, demands that the stock should be cancelled or dealt with in some such fashion as was done in the *Scully Case,* is a question that the court must decide. Stockholders have the right to ask for such decision under circumstances such as we find here. *Ellis v. Penn Beef Co., supra.*

I have no hesitancy in concluding that there should be a cancellation. The case is not like the *Scully Case,* where promoters did work and had never been remunerated. Here, the promoters were in the sequel very amply paid. They received a dividend of seven dollars and fifty cents a share at the end of the first year on the stock and received numerous dividends since. In the third year and thereafter they drew salaries in addition to whatever dividends were paid. It would appear that they have been amply compensated for the services they rendered in selling the defendant's stock. I can see no justification for allowing the pro-

moters to retain the one hundred and fifty thousand shares of stock. When it was issued, not a particle of consideration was given for it, and even if the subsequent rendition of services could be made to relate back and constitute a consideration *nunc pro tunc,* so to speak, it would be unjust to allow it because those services were otherwise compensated.

The foregoing is written on the supposition that the stock is voidable and not void, and that when such is the case the court may decree cancellation or not as would be most consistent with equity. Such I understand to be the result of the two cases hereinbefore cited which were both decided by Chancellor Curtis.

The conclusion is that the stock held by the defendants should be cancelled. Zihlman who claims that he is an innocent purchaser for value has failed to show anything establishing his claim. He neither appeared as a witness nor produced testimony from others to support his claim. The burden was on him to do so. *Dick v. Doughten,* 1 *Del. Ch.* 320; *Cieniewicz v. Sliwka, et al.,* 15 *Del. Ch.* 192, 133 *A.* 695; *Id.,* 14 *Del. Ch.* 362, 128 *A.* 527.

Decree accordingly.