JOHAN JOHANSEN ET AL., Appellants, v. ST. LOUIS UNION TRUST COMPANY, Executor and Trustee under the Will of E. W. GROVE, SR.— 131 S. W. (2d) 599.

Division One, September 14, 1939.*

---

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for reheading filed; motion overruled at September Term, September 14, 1939.

*Paul Dillon* and *Peabody, Westbrook, Watson & Stephenson* for appellants; *Bishop & Claiborne* of counsel.

*Hennings, Green, Henry & Hennings* and *Williams, Nelson & English* for respondent.

BRADLEY, C.—This cause is in equity, and is by the bond holders and general creditors of the Grove-Dowling Hardwood Company, a Florida corporation, to recover an alleged balance due on stock from the E. W. Grove, Sr., estate, which estate owned 50,000 shares of stock, in the corporation, of the par value of $100 each. In full payment for 49,984 shares of the stock, E. W. Grove, Sr. (prior to his death) conveyed to the corporation 110,000 acres of land in Levy County, Florida. The cause is based on the contention that E. W. Grove, Sr., did not pay, to the corporation, the par value of the 49,984 shares and that the E. W. Grove, Sr., estate was liable to the creditors of the corporation in an amount equal to the difference between the amount paid for the stock (the reasonable value of the land) and the par value of his stock. The Grove-Dowling Hardwood Company issued $1,750,000 in bonds secured by deed of trust on the 110,000 acres of land and other property. Plaintiffs, Johan Johansen and John Holtmeier filed this suit, and thereafter, through a bondholders' committee, numerous bondholders intervened. Also, general creditors filed an intervening petition. Original plaintiffs and intervenors may all be classed as plaintiffs.

The prayers of the separate petitions were to the effect that the purchase agreement between E. W. Grove, Sr., and the corporation,

whereby the 49,984 shares of stock were issued to Grove be declared "fraudulent and void to the extent of the overvaluation of said timber land;" that the court "determine the amount" of the overvaluation, and render such judgment as might "be deemed just and proper."

The answer, in addition to a general denial, is: (1) The alleged good faith and belief of E. W. Grove, Sr., and the directors of the Grove-Dowling Hardwood Company, that the reasonable value of the land on November 5, 1926 (date of stock purchase), was equal to the par value of the stock; (2) a two years' limitation statute of Florida; (3) a plea of the Missouri one-year Statute of Limitation for presenting claims against estates of deceased persons; (4) a plea of laches; (5) the no recourse provision in the bonds (see infra); (6) lack of capacity of the bondholders to maintain the suit; (7) the Missouri five years' Statute of Limitation; (8) that the bondholders did not purchase in reliance upon any representations of Grove or the Grove-Dowling Hardwood Company; (9) the general Limitation Statute of Florida; (10) that the Grove estate had relied upon certain appraisals of the properties of the Grove-Dowling Hardwood Company in connection with the issuing of the bonds, and had invested $637,817.65 in cash in the Grove-Dowling Hardwood Company and had lost the same, and that this loss was in addition to the loss of the 110,000 acres of land; and (11) that the real parties in interest were bond companies. The answer to the petition of the unsecured creditors was the same, except as to the 5th, 6th, and 10th defenses.

The trial court found for defendant and this appeal followed.

Plaintiffs contend that the evidence was not sufficient to support the finding and judgment for defendant, and in their original brief say that "since it appears (from the brief) that each and all of such defenses wholly fail, it is respectfully urged that a decree should be entered here in favor of the plaintiffs and intervenors for such portion of the amount remaining unpaid on the 49,984 shares of stock as may be necessary to satisfy the unpaid balance of their claims against the company, with interest." A rather extensive statement of the facts is required.

The Grove-Dowling Hardwood Company was incorporated June 5, 1926, under the laws of Florida. The authorized capital was $6,-250,000, divided into 62,500 shares of the par value, as stated, of $100 each. At the time of organization, E. W. Grove, Sr., of St. Louis, subscribed for 16 shares and paid therefor. At the same time, William H. and James H. Dowling, brothers and residents of Florida, subscribed for 2 shares each and paid therefor. November 5, 1926, the Dowlings, under the name of The Dowling Company, owned and operated saw mill plants in Bradford, Suwannee, and Pasco counties, Florida. E. W. Grove, Sr., at that time, owned the 110,000 acres of

land mentioned. November 5, 1926, the Grove-Dowling Hardwood Company purchased from E. W. Grove, Sr., the 110,000 acres of land, and paid therefor by issuing to Grove, 49,984 shares of stock, par value, $4,998,400. At the same time, the corporation purchased from the Dowlings all their mills, equipment, and good will, and paid therefor by issuing to them 12,496 shares of the par value of $1,249,-600.

E. W. Grove, Sr., died January 27, 1927, and his will named the St. Louis Union Trust Company and E. W. Grove, Jr., as executors and trustees. May 30, 1934, E. W. Grove, Jr., died, and no successor was appointed.

After acquiring the 110,000 acres of land, the Grove-Dowling Hardwood Company went about the establishment of mills at Gulf Hammock (Levy County), Florida, to cut the timber on the land. Under date of September 1, 1927, the company issued $1,750,000 in bonds, interest 6½ per cent, payable semiannually. The first maturity was September 1, 1929, and the last September 1, 1942. The bonds were secured by deed of trust, of even date with the bonds, on the 110,000 acres of land and "all other property, wheresoever located, which the company now has or may hereafter acquire, including all locomotives, cars, railroad equipment, buildings, machinery and equipment of every kind and nature, and that all of the company's said property is held as security for said bonds." The bonds (denominations $500 and $1000) were sold to a bond company "at 90 and accrued interest," and then were resold to the general public. Each bond contained what is called a "no recourse" provision (refered to, supra), to the effect that a holder would have no recourse "against any incorporator, stockholder, officer or director, past, present or future, of the company, or of any successor corporation. . . ."

The Grove-Dowling Hardwood Company operated on a large scale, but the price of lumber went disastrously down, and the company defaulted in the payment of the $100,000 (bonds) due September 1, 1929, and foreclosure proceedings were commenced November 29, 1929, in the Federal District Court in Florida. June 10, 1930, foreclosure was decreed and on July 25, 1930, the 110,000 acres of land and other properties, described in the deed of trust, were sold, for $1,152,000, to the Robinson Land & Lumber Company. So far as court records showed payment was in cash, but by consent of the bondholders' committee, payment was actually made by paying $500,-000 cash and the balance in bonds of the purchasing company secured by deed of trust on the property sold. After certain specified items were paid from the $500,000 cash, the bondholders, who had deposited their bonds with the committee, were paid, for each $100 in bonds, the sum of $5 cash and $60 in Robinson Land & Lumber Company bonds. The non-depositing bondholders were paid $46.25 in

cash for each $100 in bonds held by them. These two payments were considered about equal in value. The sale was approved August 11, 1930, and the present suit was filed December 5, 1931.

Plaintiffs' evidence as to the value of the land on November 5, 1926, was as follows:

J. C. Sale testified that he had been county judge of Levy County, Florida (location of the 110,000 acres), since January, 1921; that he was also in the abstract and title business in the county, and had been in such business since 1913; that he was familiar with land values in the county, and was familiar with the 110,000 acres that "Dr. Grove owned and sold to Grove-Dowling Hardwood Company;" that when Grove transferred the land to the company its value did not exceed $10 per acre—$1,110,000.

R. L. Anderson, Jr., an attorney since 1914, was born in Marion County, Florida, adjoining Levy County. Anderson testified that he handled real estate; was familiar with land values in Levy County; that he and his father, an attorney, handled the foreclosure proceedings of a 58,829 acre tract in Levy County, known as the Joseph Dixon Crucible tract, which tract was a part of the 110,000 acre tract; that the value of the 58,829 acre tract in November, 1926, was "not in excess of $10.00 per acre;" that another tract of 19,580 acres, designated as the cut over lands, and part of the 110,000 acres, in November, 1926, "was worth not in excess of $3.00 an acre." (Judge Sale valued the cut over lands at $7.50 per acre.) Anderson valued the palmetto lands (25,120 acres) at $1 per acre. Anderson also testified that E. W. Grove, Sr., purchased the 58,829 acre tract at the foreclosure sale (handled by Anderson) for $385,000; that $85,000 was paid in cash, and the balance by four notes of $75,000 each, due one, two, three, and four years.

J. J. Upchurch testified that he had spent "50 odd years in Florida;" that during the "greater part of that time" he was "in the lumber business; and the balance of the time in the real estate business;" that "his lumbering operations embraced Levy County;" that he was familiar with land values in Levy County in 1924, 1925, and 1926; that he was "especially familiar with property known as the Joseph Dixon Crucible tract;" that his company had owned this 58,829 acre tract, but lost it under a foreclosure sale (handled by witness Anderson) in 1925. Upchurch testified that the foreclosure suit "was pending three or four years," and that "during all that time" he was trying to sell the tract for $500,000, "but never got any offer." It appears that, in the foreclosure proceedings relative to the Joseph Dixon Crucible tract, an error was made in description, and Upchurch's company was threatening suit, and that E. W. Grove, Sr., paid $25,000 "for stopping the suit" and a quitclaim deed.

D. A. Andrews, who resided in Levy County, valued the palmetto lands (November, 1926) at $1 per acre, same as witness Anderson.

W. T. Fugate, age sixty, county commissioner of Levy County, experienced in surveying timber lands, valued (1926) 90,000 acres of the 110,000 acre tract at $8 per acre, and 20,000 acres at $10 per acre.

Defendant's evidence on the question of value: J. E. Woodman, an experienced timber cruiser, between January 10th and April 15, 1927, for the James D. Lacey Company, cruised 96,319 acres of the 110,000 acre tract. The timber was pine, cypress, sweet gum, tupelo, oak, magnolia, cedar, palmetto, ash and maple. Woodman said that "the merchantable timber was confined to 87,920 acres." The cruise showed a total of 672,911,800 board feet, which included 229,841,900 board feet of palmetto. Eliminating the palmetto, there were 433,069,900 board feet. The evidence (by witness Boykin, infra) tended to show that the stumpage value (excluding palmetto) in 1926 was at least $13 per 1000 feet. On this basis, the stumpage value of the timber, not including palmetto, in 1926, was $5,629,908.70.

The Dowlings, prior to the organization of the Grove-Dowling Company, had been endeavoring to purchase from E. W. Grove, Sr., the 110,000 acre tract, but were not successful. W. H. Dowling testified that the organization of the Grove-Dowling Hardwood Company "grew out of these negotiations with E. W. Grove" to purchase the tract, "but that was not the intention of the negotiations when started." Dowling further testified that he had been in the sawmill business for eighteen years in Florida, and had occasion "to buy tracts of timber over a period of twenty years in Florida and in the vicinity of Levy County and middle Florida;" that he was "acquainted with the values that were being placed on real estate and timber before the organization of Grove-Dowling Hardwood Company;" that he "considered the value (November 5, 1926) of the land and timber (the 110,000 acre tract) to be around seven or eight million dollars. . . . I figured that, in a period of years, that much timber in value could be sawed out of it. I based my conclusion on various observations that my brother, James H. Dowling, and myself made on various trips of inspection of the timber, and timber men that were hired to go with us and look at it. . . . They were well known timber estimators. . . . I had personally inspected the timber and my brother also had personally inspected it. In addition, we had had timber estimators look over it. We did not have a cruise, just a cursory examination. This was prior to the organization of Grove-Dowling Hardwood Company. After the company's organization we had a cruise made by James D. Lacey & Company. . . . After the incorporation of the company we moved the plant of The Dowling Company up to Gulf Hammock, Florida, and conveyed all its personal property and good will to the Grove-Dowling Hardwood Company. For that conveyance, stock to the extent of $1,250.000 ($1,249,600) was issued to me and my brother. I considered the property conveyed by The Dowling Company to Grove-Dowling Hardwood

Company was reasonably worth, at the time of conveyance, the amount for which capital stock was issued—$1,250,000 ($1,249,600), and we thought our stock was well worth more than par. That was my opinion at the time we made the conveyance.''

J. H. Snyder testified that he lived in Chicago, was in ''the appraisal business, and was president of Coats & Burchard Company, which company was engaged in ''appraising all kinds of physical property;'' that the company ''had a wide experience in the appraisal of saw mills and wood working properties;'' that in 1927, his company made appraisals ''all over the United State;'' had offices in Chicago, New York, Detroit, Cleveland, Indianapolis, Cincinnati, St. Louis, Atlanta, New Orleans, and Dallas; that his company in 1927 (before sale of bonds here involved) and for Peabody, Houghteling & Company (purchaser of the bonds) appraised the Grove-Dowling Hardwood Company properties which were offered as security for and which later secured the bonds. W. M. Snyder (dead at time of the trial, and no relation of witness) made the appraisal. The 110,000 acres, exclusive of the timber, was appraised at $1,506,640. The total net sound value of all properties, mills, etc., exclusive of timber, was appraised at $3,298,430.88. Counsel for plaintiffs objected to the admission in evidence of W. M. Snyder's appraisal on the ground that he was dead, but this objection was withdrawn and counsel conceded that the appraisal was competent on the defense of good faith.

L. J. Boykin testified that he was in the lumber business and had ''been so engaged for 37 years;'' that in 1928 he became president of the Grove-Dowling Company. As to the stumpage value of the timber on the 110,000 acres Boykin testified: ''The value of timber is based on the value of what your finished product is sold for. I would say timber such as I saw in 1928 (on the 110,000 acre tract) was valued at approximately $13 a thousand, stumpage and cleaned, that is, taking into consideration the species of timber that I found there. . . . I would say it was worth more in September, 1926.''

Defendant pleaded Section 6537, Complied General Laws 1927 (Florida). This section provides: ''Shares of stock other than shares without nominal or par value may be issued only for a consideration having a value, in the judgment of the board of directors of the corporation, at least equivalent to the full par value of the stock so to be issued; and in the absence of fraud in the transaction, the judgment of the directors as to the value of any such consideration shall be conclusive.''

A stockholder's liability to creditors of a corporation is determined by the law of the state of the corporation's domicile. [Rogers v. Stag Mining Co., 185 Mo. App. 659, 171 S. W. 676; 13 Am. Jur., sec. 512.] American Jurisprudence states the law thus: ''Assuming that the liability of stockholders of a corporation to its creditors is

properly enforceable in the forum, it is the general rule that such liability is determinable according to the law of the state of the corporation's domicil and by the laws of which it was organized. This is on the principle that one who becomes a stockholder in a corporation submits himself to the jurisdiction and laws of the incorporating state . . ."

Then there is, in corporation law, what is known as *the true value rule,* and *the good faith rule.* Of these rules 14 Corpus Juris, pages 961, 962, says: "In some jurisdictions a rule called the 'true value rule' has been adopted by the courts and is in force. By this rule, with slight qualification in some states, one who subscribes for and receives stock of a corporation must pay therefor the par value thereof either in money or money's worth, so that the reals assets of the corporation at the outset at least, shall square with its books; and therefore, whenever, whether by fraud, accident, or mistake, the true value of the property, labor, or services received in payment does not equal the par value of the stock, it is deemed unpaid to the full extent of the difference, and the holders are liable to or for the benefit of creditors of the corporation for this difference notwithstanding the directors acted in good faith and the overvaluation was due to error of judgment, mistake, or accident. . . . In other jurisdictions the Legislature or the courts have adopted a rule called the 'good faith rule,' as opposed to the 'true value rule.' By this rule the good faith of the valuation and not the true value of the property, labor, or services determines whether the stock is full paid as against creditors. If the directors have acted in good faith and without actual fraud or intentional overvaluation, the stock is to be deemed fully paid up, even as against creditors, although it may afterward appear that, through mistake, accident, or error of judgment there has in fact been an overvaluation."

13 American Jurisprudence, section 559, of the good faith rule says: "The 'good faith' rule, adopted in numerous jurisdictions, recognizes that the value of property or services is a matter about which an honest difference of opinion may be entertained. Therefore, if an exchange of services or property for stock is made in good faith, both parties believing that the consideration is the equal of the par value of the stock taken in exchange for it, the stockholder is protected as against creditors, even though, by reason of a mistake or error of judgment, the consideration is in fact inadequate."

The Florida statute above quoted, was in force on November 5, 1926, when E. W. Grove, Sr., exchanged the 110,000 acres for the 49,984 shares of stock in the Grove-Dowling Hardwood Company. This statute has not been construed, but counsel for defendant say, and we agree, that it is, in effect, a statutory enactment of the good faith rule.

E. W. Grove, Sr., was president of the Grove-Dowling Hardwood

Company on November 5, 1926. The minutes of a meeting of the board of directors held in St. Louis, on that date, show that E. W. Grove, Sr., E. W. Grove, Jr., James H. Dowling, and Isaac H. Orr, "constituting a majority and quorum of said board," were present. Among other resolutions adopted at this meeting were these:

"1. That Grove-Dowling Hardwood Company accept the offer of E. W. Grove (Sr.) and purchase from him approximately 110,000 acres of land, together with the timber thereon, as described in the form of deed from E. W. Grove (Sr.), and wife to this corporation presented at this meeting.

"2. That in the opinion and judgment of this board of directors said property has a value, exclusive of the $300,000 of liens to be assumed by this corporation, at least equivocal to the full par value of $50,000 (49,984) shares of stock of this corporation.

"3. That upon delivery of deed of said properties the officers of this corporation are hereby authorized to issue and deliver to said E. W. Grove (Sr.), 50,000 (49,984) shares of stock of this corporation in full payment of the consideration for said properties."

At the time of the trial of this cause, Isaac H. Orr was the only board member living who was at the meeting of the board of directors November 5, 1926. Mr. Orr testified that he was chairman of the board of the St. Louis Union Trust Company, the defendant, and had been connected with the defendant for thirty-eight years; that at the time the 110,000 acres were "transferred to Grove-Dowling Hardwood Company," he did not know what Grove paid for it and did not know when he acquired it; that when the company acquired the 110,000 acres he believed "the land was worth $5,000,000; that this belief was based upon what E. W. Grove, Sr., and "one other man" (William H. Dowling) told him.

This is an equity case and we are not bound by the finding and judgment of the trial chancellor. However, there is nothing in the record that would justify us in overturning the judgment. There was abundant evidence that Grove, Sr., and the board of directors acted in good faith. This cause was tried by one of our ablest circuit judges, Judge O'Neill Ryan, now deceased. Judge Ryan filed a rather lengthy and able written opinion which is printed in the record. Near the conclusion thereof Judge Ryan said:

"To sum up: If, as plaintiff's counsel contend, the value of the land in 1926 was one-sixth of the par of the stock issued therefor, the board could not shield itself, and so the Grove estate cannot, by merely saying they believed in good faith it was worth the equivalent of the stock. On the other hand if they had reasonable grounds to support their belief then the shield is complete. The Florida statute (Sec. 6537, supra) and the general law that would apply make it a complete defense. The plaintiffs having produced evidence the land in 1926 (Nov. 5th) was worth at most about $1,200,000.00, the court is agreed with

counsel that the burden then rested on defendants to prove to the satisfaction of the court that it was fairly valued at $5,000,000.00. That they have done.''

We agree with the conclusion reached by Judge Ryan on the good faith defense, hence it is not necessary to consider other questions. The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Hays, P. J.*, absent.

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing filed; motion overruled at September Term, September 14, 1939.