PIPELIFE CORPORATION, a Delaware corporation,
Plaintiff,

*vs.*

BARNEY F. BEDFORD, JOHN BOLES, J. C. COOPER, B. G. EFTING, and M. D. FANNING, *et al.*,
Defendants.

*New Castle, February 25, 1959.*

*Stewart Lynch,* of Hastings, Lynch & Taylor, Wilmington, and *David M. Thornton,* Tulsa, Okla., for plaintiff.

*Irving Morris,* of Cohen & Morris, Wilmington, for defendants Bedford, Cooper, Fanning and Efting.

*Howard L. Williams, Edmund D. Lyons* and *Arthur J. Sullivan,* of Morris, James, Hitchens & Williams, Wilmington, for certain other defendants.

SEITZ, Chancellor: In its prior opinion this court determined that the non-exclusive license transferred to the plaintiff corporation by these defendants and others for 367,000 shares of its $1 par value stock did not have a value even substantially near $367,000. The court reserved for future determination the question as to the value which should be ascribed to the license and, in effect, the nature of the relief to be granted. See *Pipelife Corp. v. Bedford, ante p. 276.*

What is the reasonable value which should be attributed to the license on September 18, 1954, when it was assigned for 367,000 shares of $1 par value stock? In its prior opinion the court made it clear that the process of determining such value was extremely difficult. The parties were given an opportunity to adduce additional testimony on this point but finally agreed to have the matter decided on the record as made.

In December 1954, less than three months after the issuance of the stock in question, 135,730 shares of such stock were repurchased by the corporation from two of the promoters for $30,000. The executive of plaintiff corporation responsible for this action was the principal figure in negotiating the 1954 repurchase. I think the price paid is an acceptable basis for determining the value of the 367,000 shares at the date of issuance. I say this because it was the value fixed by a man who was aware of all the facts at the time and who was the inventor of the process. Moreover, it would seem to be highly inequitable to permit a lower value factor to be used on the stock in dispute merely because it was not repurchased.

I realize that other factors may have been involved when the corporation offered $30,000 for the 135,730 shares. Thus, plaintiff corporation argues that the price was inflated by the desire to "buy off" trouble. Conceding this to be true, it may also be noted that the price was deflated by the nature of the stockholdings generally. Nor do I consider significant here the limited lapse of time between the original issuance and the date of purchase of these shares. I should add that I am satisfied that the use of the $30,000 figure also represents, contrary to defendants' contention, the maximum figure which should be employed.

By adopting the $30,000 figure and applying it to the 367,000 shares, the result is that the corporation received 22 cents worth of value for each share of $1 par value stock issued.

Defendants say that the plaintiff corporation should pay 22 cents per share to the defendants for each share of stock held by them which is cancelled. Defendants' counsel says that by so doing the corporation will have paid for the license and the defendants will not be left in the position of being minority stockholders.

I start with the premise that the stock is voidable. In such a case this court may, perhaps, *inter alia,* either cancel such shares or require a notation on the certificate that such stock is not fully paid for. See *Scully v. Automobile Finance Company,* 12 *Del.Ch.* 174, 109 *A.* 49; *Blair v. F. H. Smith Co.,* 18 *Del.Ch.* 150, 156 *A.* 207. In determining the proper course the court considers the "equities".

■ This is an *in rem* action. Consequently, contrary to defendants' suggestion, the court cannot require plaintiff to pay defendants for their stock at the rate of 22 cents per share. However, the court is free to condition its relief and the court will consider that approach at an appropriate time.

■ I am satisfied that the facts as found in this and the prior opinion warrant the recognition of some equities in favor of defendants. However, I am equally satisfied that the defendants are not free to have this matter evaluated solely on the basis of the number of shares such defendants have left under their ownership or control. Otherwise, the matter would be determined by the mere fortuitous circumstances of whether or not they have disposed of their shares.

■ Finally, I see no merit to defendants' contention that because shares were returned to the corporation by Johnston and Boles (representing some of the shares issued for the license) the full value of the license should only be applied to the shares held by these defendants. I say this because these defendants are not entitled to the benefit of the contributions, if any, made by other parties.

■ I believe the equitable approach is to start with the number of shares each defendant can be said to have received beneficially. Each defendant is then entitled to a "credit" in the amount of 22% of the par value of such shares. He is also entitled to a credit based upon such "equities" as the court may recognize. The total credits can then be used to determine whether any defendant is chargeable with shares in excess of his total credits, putting aside for the moment any question of joint liability.

The parties agree upon the accuracy of the following "starting" figures: Bedford and Efting—37,200 shares, Fanning—36,200 shares, and J. C. Cooper—46,000 shares of $1 par value shares.

■ From these totals the plaintiff corporation agrees that 1,666 shares each should be deducted from Bedford's and Fanning's totals while 1,667 shares each should be deducted from J. C. Cooper's and

Efting's totals.[1]  These shares were contributed by these defendants to induce an individual to become an officer and employee of the corporation.

Defendants next contend that Efting, Bedford and Fanning should be credited with stock contributed by them to one Dowlen for services rendered by him in connection with the sale of 100,000 shares of Pipecote Service Company, Inc., stock by the corporation.

The portion of the record to which defendants' counsel refers in support of this equity is too scanty to justify the conclusion that a credit should be given for these contributions.  The basis of the arrangements was more personal than corporate in nature.  A credit will not be given for those contributions.

Next a claim for credit is made on behalf of Bedford and Efting for commissions waived on the sale of Pipecote stock for the corporation.  They sold 100,000 shares of $1 par value stock at a time when the commission would have been 20%.  I am satisfied that they only waived the commissions because they were substantial stockholders who sought thereby to benefit the entire corporation.  This was a service rendered pursuant to a direct agreement with the corporation.  Therefore I believe it is equitable to give Bedford and Efting each an additional "credit" of 10,000 shares in determining the number of their shares to be cancelled.

If, as seems to appear, Bedford, Efting and Cooper paid a Texas law firm 5,000 shares of the stock for services in organizing the plaintiff corporation, they are entitled to appropriate credits therefor.  I am not certain of the allocation of these shares between the defendants named.  Unless plaintiff's counsel can point out promptly that these shares were not issued for the indicated purpose, the credit will be given.

---

1. Defendants' counsel argues that the deductions should be at the rate of $4 per share because he concludes that such was the value of the shares at the time they were returned.  Passing over the question of their value, I believe the cancellation must be viewed as of the date of issuance with consideration of "equities" in favor of those whose shares are to be cancelled.  This so-called increase in value is not such an equity.

No decision on the claim of Irving Morris for an attorneys' lien is relevant at this point.

Counsel are requested to advise the court promptly as to the number of shares which should be credited to each defendant after giving effect to this decision. Counsel should also advise the court as to whether, and if so to what extent, the number to be cancelled as against each defendant exceeds the number of shares held by such defendant, whether received through the original issuance or subsequently acquired. This will include shares held by others but subject to treatment as though in defendants' names. The court will then determine whether it is necsssary to decide the issue as to the joint liability of these defendants and the nature and terms of the relief to be granted.