**James M. YATES, Plaintiff–Appellant,**

v.

**BRIDGE TRADING COMPANY, et al., Defendants–Respondents.**

No. 60217.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 27, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 3, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Peper, Martin, Jensen, Maichel & Hetlage, Audrey G. Fleissig, Lewis R. Mills, Robert Schultz, Diana Schmidt, St. Louis, for plaintiff-appellant.

Armstrong, Teasdale, Schlafly & Davis, Edwin L. Noel, Thomas B. Weaver, Glenn E. Davis, St. Louis, for defendants-respondents.

PUDLOWSKI, Judge.

This case involves the issuance of stock for a promissory note by a Delaware corporation having its principal place of business in Missouri. Plaintiff-appellant, James M. Yates, appeals a court tried judgment by the Circuit Court for the City of St. Louis finding the contract arising from a stock purchase agreement void under Missouri law because the consideration exchanged for the stock was a promissory note.

On appeal, Yates argues that the trial court erred in entering judgment for respondent, Bridge Trading Company, on several grounds. First, appellant argues he had tendered full payment of a promissory note signed by appellant in exchange for shares curing any defect in the consideration paid for the shares. Next, appellant states the trial court erred in that he proved respondents had converted his shares. Appellant further argues that the trial court incorrectly applied section 351.-160 of the General and Business Corporation Law of Missouri because the "internal affairs doctrine" bars the application of Missouri law to a stock issuance by a corporation organized under the laws of another state. § 351.160, RSMo 1986. Appellant urges, notwithstanding the choice of law stipulation contained in the disputed stock purchase agreement, that section 351.160 by its express and defined terms does not apply to stock issuances by foreign corporations. Appellant also contends the trial court should have applied Delaware law to the stock issuance transaction based on the principles set out in the Restatement (Second) of the Conflict of Laws.

Appellant's next points of error assume that the court should have applied Delaware law and entered judgment for Yates based upon the application of that law.

Appellant argues that under Delaware corporate law, stock issued in exchange for a promissory note is voidable (rather than void, as in Missouri), invoking the court's equitable jurisdiction, and balancing the equities entitles Yates to possession of the disputed shares of stock. Continuing on the assumption that the contract should be given effect in equity, appellant argues that respondents are barred by waiver, laches and estoppel from contesting the validity of the stock purchase agreement.

Appellant's final set of points centers on the effect of the dissolution and liquidation of Bridge Trading Company on its obligation under the stock purchase agreement to turn over the disputed shares to appellant.

We affirm.

## I. *Facts*

The instant case was tried without a jury entitling this court to review both findings of fact and conclusions of law made by the trial judge. In a court tried case, we affirm the judgment of the trial judge unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Additionally, we defer to the judgment of the trial judge in assessing the credibility of testifying witnesses. Rule 73.01(c)(2).

At the outset, we note that respondent's brief disputes certain findings of fact. The disputed findings of fact along with all relevant findings of fact have been reviewed in accordance with the standards set out above. We find that each finding of fact was supported by substantial evidence. We are not firmly convinced that any finding was against the weight of the evidence and defer to the trial court's superior ability in evaluating the credibility of testifying witnesses.

In 1974, appellant Yates and defendants Charles A. Lebens, William C. Stafford, William P. Riley and Harry L. Franc, III, founded Bridge Holding Company (Hold-

ing)—a Missouri corporation. Holding owned two subsidiary corporations, Bridge Trading Company (Old Trading) and Bridge Data Company (Data). Both subsidiaries were organized under the laws of Delaware and had their principal place of business in Missouri. Appellant served as the president of both Data and Holding until his removal from those positions in 1986.

The purpose of this corporate triangle was to develop and market a computer system—the "Bridge System"—to receive and process "real time, last sale" information from major security exchanges. The processed information was sold to institutional investors. Data and Old Trading were formed as separate corporations to comply with various New York Stock Exchange and SEC regulations. Data developed the computer system and received and processed the raw information. Old Trading sold the processed information to institutional customers. The two subsidiaries were closely related with each depending on the other for continuing viability.

In 1977, Holding sold 100% of its stock in Old Trading to Loewi & Co., a regional brokerage firm. After 1977, Old Trading was never again owned by Holding although the companies continued to be closely affiliated because of their symbiotic relationship. As part of the sale, Data entered into an exclusive marketing arrangement with Old Trading to sell the system's services to institutional customers. In 1978, Timothy Noble and others purchased Old Trading from Loewi. In 1981 or 1982, the board of directors at Old Trading decided to recapitalize Old Trading.

In April 1983, an agreement was reached in which certain individuals including appellant were offered the opportunity to purchase Old Trading stock. The stock purchase agreement, dated April 1, 1983, stipulated that the stock in Old Trading could be purchased for $3.56 per share. The stock purchase agreement expressly contemplated that the shares would be paid for with a promissory note. The note was secured by a pledge of the stock purchased from Old Trading. The promissory note, executed by the parties to the stock purchase agreement, was a demand note, and the trial court found that demand for payment was never made upon Yates before he tendered payment in 1987. The stock purchase agreement contained certain repurchase options and transfer restrictions. The agreement additionally provided: "This agreement and all restrictions on stock transfer created hereby shall terminate on the occurrence of ... [t]he bankruptcy or dissolution of the company." The promissory note and the pledge agreement did not contain a similar restriction.

The shares when distributed—combined with some shares already owned by certain parties gave the shareholders in Old Trading the following interests:

| Shareholder | Number of Shares |
| --- | --- |
| Harry L. Franc III | 45,000 |
| Charles A. Lebens | 45,000 |
| Timothy F. Noble | 45,000 |
| William P. Riley,Jr. | 35,000 |
| William C. Stafford | 35,000 |
| Mark A. Minister | 18,000 |
| Robert E. Hermanson | 18,000 |
| Kenneth M. Spence | 18,000 |
| James M. Yates | 18,000 |
| James E. Schlueter | 8,961 |

Appellant did not participate in the negotiation or drafting of the stock purchase agreement. Appellant signed the stock purchase agreement and executed a promissory note for $64,080, secured by a pledge of the shares. In April 1983, each party listed in the table above, except James Schlueter, purchased the shares offered them in the stock purchase agreement by executing a promissory note. In November and December of 1983, all of the parties, except for appellant, who had purchased the stock paid the balance on their promissory notes. Seven of the nine parties to the stock purchase transaction received bonuses from Old Trading late in 1983 which they used to pay off the balance of their promissory notes and claim their pledged shares. Appellant did not receive a bonus and made no payment on the note at that time.

At no time did appellant receive a pay check from Old Trading nor was he formally an employee of Old Trading for tax purposes. Unlike defendants Lebens,

Franc, Stafford, Riley and Hermanson who were paid by Old Trading, appellant received his pay from Data. He did not receive the late 1983 bonus from Old Trading as the employees of that company did. The trial court specifically found that appellant was never an employee of Old Trading in any sense of the word. Appellant was, however, an insider due to the close relationship between Data and Old Trading. His close working relationship with Old Trading was the reason behind his inclusion in the stock purchase plan.

After April 1983, appellant exercised his rights over the stock he had purchased with the promissory note. In 1986, a merger was proposed between Old Trading and Holding, the parent of Data. Appellant voted the 18,000 shares in opposition to that merger and, thereby, blocked its occurrence. In 1987, appellant again voted the 18,000 shares against another proposed merger. Appellant was listed in the proxy materials of Old Trading as the owner of 18,000 shares of Old Trading stock.

On June 30, 1987, Old Trading filed its articles of dissolution with the Secretary of State for the State of Delaware. In the process of dissolution, Old Trading transferred all of its assets to a subsidiary of Bridge Information Systems (Information) (f/k/a Holding). Information then distributed stock to the shareholders of moribund Old Trading at the rate of ten shares of Information stock for each share of Old Trading stock. During July 1987, appellant attempted to sell his shares of Old Trading to an outside company, TA Associates, for $75.00 per share but was unable to do so because defendants would not release his pledged stock certificate. Appellant was under the impression that his shares would be subject to certain transfer restrictions, and he informed TA Associates of those concerns.

On July 13, 1987, appellant dispatched a check to Old Trading for $90,000 as payment of his promissory note and accrued interest. In an August 14, 1987 letter, Old Trading refused to deliver the 18,000 shares to appellant and returned appellant's check. The trial court found that during this period the value of each share of Old Trading stock was $75.00 per share for a total value of $1,350,000.00 to appellant. During oral argument, appellant did not contest the valuation of the shares set by the trial court. At the ten to one exchange rate, appellant claims that he is entitled to 180,000 shares of Information stock which are being held in escrow pending the outcome of this litigation.

The trial court held that Missouri law controlled the issuance of stock and that the consideration paid for the stock was void under Missouri law. The court also held that the stock purchase agreement by its terms terminated when Old Trading filed its articles of dissolution, and appellant's tender of payment of the promissory note was, thereby, ineffective under both Missouri and Delaware law.

Additional facts will be developed as necessary.

The principal issues on appeal are: (1) what law controls the transaction; (2) does that law validate the stock purchase agreement; and (3) what effect did the dissolution have on the stock purchase agreement.

## II. *Choice of law*

Old Trading was a Delaware corporation with its principal place of business in Missouri. This would normally mean that the corporate law of Delaware would control the stock issuance. *See, e.g., Hemphill v. Jackson,* 306 S.W.2d 610, 614 (Mo.App. 1957); *Johanson v. St. Louis Union Trust Co.,* 345 Mo. 135, 131 S.W.2d 599, 603 (1939); § 400.8–106, RSMo 1986; Restatement (Second) of the Conflict of Laws § 302 comments e–g (1971). The stock purchase agreement at issue, however, contains a choice of law clause that selects the law of Missouri as governing the agreement.

■ Applying Missouri law to the instant case quite clearly renders the current stock purchase agreement void. Section 351.160(1) of the General and Business Corporation Law of Missouri provides, in part:

No corporation shall issue shares … except for money paid, labor done, or prop-

erty actually received; and all fictitious issues ... shall be void....

§ 351.160(1), RSMo 1986. The Missouri Constitution, Art. XI, § 7, contains analogous language. The Missouri Supreme Court has held that a promissory note is not money or property and does not constitute valid consideration for stock. *Townsend v. Maplewood Investment & Loan Co.*, 351 Mo. 738, 745, 173 S.W.2d 911, 914 (Mo.1943). *See also Capoferri v. Day*, 523 S.W.2d 547, 549 (Mo.App.1975).

█ In contrast to Missouri, Delaware treats the absence of valid consideration as rendering the stock issuance voidable rather than void.[1] *Highlights for Children, Inc. v. Crown*, 43 Del.Ch. 323, 227 A.2d 118, 122 (1966). The court balances the equities to determine whether the corporation may cancel the shares or whether the party claiming entitlement to the shares may pay adequate consideration for the shares and cure the defect in consideration. *Blair v. F.H. Smith Co.*, 18 Del.Ch. 150, 156 A. 207, 213 (1931).

In support of his claim that Delaware law should have been applied to determine the validity of the stock issuance appellant advances three arguments.

### A. The Internal Affairs Doctrine

█ First, appellant urges that the internal affairs doctrine requires the application of Delaware law. The internal affairs doctrine provides that the law of the state of incorporation should be applied to settle disputes affecting the organic structure or internal administration of a corporation. The doctrine is recognized by statute in Missouri. *See* § 351.582(3), RSMo 1990. The state of incorporation is acknowledged as having a paramount interest in the internal administration of a corporation organized under its laws. *Pacific Intermoun-*

*tain Exp. Co. v. Best Truck L., Inc.*, 518 S.W.2d 469, 472 (Mo.App.1974). The issuance of stock has been held to be one of the internal affairs of a corporation which requires the application of the laws of the state of incorporation. *Jackson*, 306 S.W.2d at 614; *Johanson*, 131 S.W.2d at 603.

We are confronted with a situation in which the parties have expressly chosen the law of Missouri in the stock purchase agreement. Appellant contends that the internal affairs doctrine bars the application of Missouri corporate law to the issuance of stock by a foreign corporation notwithstanding the choice of law provision. We disagree. This issue appears to be one of first impression in Missouri. Cases from other jurisdictions indicate that forum states having the most significant contacts with corporations organized under the laws of other states have cautiously applied the forum states' laws to the internal affairs of those corporations under limited circumstances. *See Wilson v. Louisiana–Pacific Resources, Inc.*, 138 Cal. App.3d 216, 187 Cal.Rptr. 852 (1982). In the *Louisiana–Pacific* case, the California Court of Appeals justified applying California's mandatory cumulative voting provision to a Utah corporation on the rationale that sound public policy demands a legislature be vested with some control over "psuedo-foreign" corporations.[2] *Id.* 187 Cal.Rptr. at 861.

Under this approach, if the corporation's sole contact with the state of incorporation is the naked fact of incorporation and all or most of its contacts lie within the forum state, the forum state can intervene in the internal affairs of the corporation so long as the shareholders of the corporation are not subjected to contradictory or inconsistent laws. *See Application of Dohring*,

---

1. Interestingly, the Delaware Constitution provides for the same three types of consideration as in Missouri's Constitution—i.e. money paid, labor done, or personal or real property. Del. Const. Art. IX, § 3. Neither state considers promissory notes sufficiently tangible personal property to constitute valid consideration. Delaware, however, perhaps recognizing the more complex nature of modern corporate transactions, does not close the door on parties without

further inquiry. *See Blair*, 156 A. at 213; *cf. Townsend*, 173 S.W.2d at 914.

2. Psuedo-foreign corporations are organized under the laws of a state other than the forum state, but have essentially all of their contacts with the forum state. *See Louisiana–Pacific*, 187 Cal.Rptr. at 861.

142 Misc.2d 429, 537 N.Y.S.2d 767 (N.Y.Supp.1989). New York has applied its local common law right of dissolution to a Delaware corporation which was a psuedo-foreign corporation. *Id.* 537 N.Y.S.2d at 768–69. Other courts have used the Restatement (Second) of Conflict of Laws' most significant relationship approach to justify the application of local law to the internal affairs of psuedo-foreign corporations. *See, e.g., Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 473 N.E.2d 807, 810 (1984).

■ Old Trading was incorporated under the laws of Delaware, but had its principal place of business in Missouri and its stockholders lived, for the most part, in Missouri. One of the principal policy reasons for the internal affairs doctrine is to avoid the application of inconsistent or conflicting sets of laws to corporate affairs. Because the stock purchase agreement at issue applied to all Old Trading stock, the uniform application of Missouri law would not run afoul of this policy.[3] The cases discussed above indicate that courts and legislatures have increasingly regulated what was once rigidly designated as the internal affairs of a foreign corporation, especially if the foreign corporation has significant contacts with the forum. In light of the flexibility of the internal affairs doctrine as applied to psuedo-foreign corporations, and the low risk that stockholders would be subjected to inconsistent laws in this case, we find that the internal affairs doctrine does not, in and of itself, bar the application of Missouri corporate law to the issuance of stock by a Delaware corporation. The parties were free to choose the law governing their stock issuance so long as there was a uniform law applied to all shareholders, and the parties and the corporation had substantial contacts with the state whose law was selected.

**3.** This factor prevents stockholders of Old Trading from being subjected to contradictory laws and is in accord with the Second Restatement of Conflict's position which provides in the comments to section 302:

It is important that the validity of an entire share issue should be governed by a single law, because it would be impractical to have

### B. Section 351.160

Appellant next argues that section 351.-160(1) does not apply to foreign corporations by its express and defined terms. The section begins "[n]o *corporation* shall issue shares ... except for money paid, labor done, or property actually received...." (Emphasis added). Appellant contends that the word "corporation" should be read as "domestic corporation." Section 351.015 provides definitions for chapter 351. That section contains the following definitions:

(6) **"Corporation"** or **"domestic corporation"** includes corporations organized under this chapter or subject to some or all of the provisions of this chapter except a foreign corporation;

(7) **"Foreign Corporation"** means a corporation for profit organized under laws other than the laws of this state....

§ 351.015, RSMo 1986. (Emphasis original). Appellant urges and we agree that section 351.160 should be read as the law applying to domestic corporations. However, we believe that the parties to the instant agreement could choose to have their agreement governed by the sections of the General and Business Corporation Law of Missouri by an express choice of law provision. In light of our discussion of the previous point, Old Tradings' close connection to this state, and the express choice by the parties to have Missouri law applied to the stock purchase agreement, we find nothing inherently improper with the application of provisions of Missouri corporate law to a corporation that would not normally be subject to those laws.

### C. Restatement (Second)

■ Appellant's third argument states that the choice of law rules in effect in Missouri prevent the application of Mis-

an entire issue held valid in some states and invalid in others. It is also important that a single law should govern all share issues of a corporation because only in this way can the shareholders be assured of uniformity of treatment.
Restatement (Second) Conflict of Laws § 302 comment f (1971).

souri law through a choice of law provision in the stock purchase agreement because parties may not choose a local law which makes an otherwise valid contract void. Missouri has adopted the Restatement (Second) of the Conflict of Laws in contract actions. *National Starch and Chemical Corp. v. Newman,* 577 S.W.2d 99, 102 (Mo. App.1979). The Western District of this court has taken the position that when a choice of law provision renders a contract void, that choice of law provision will not be applied because it is presumed that parties enter contracts intending that they be valid. *State ex rel. St. Joseph Light & Power Co. v. Donelson,* 631 S.W.2d 887, 891–92 (Mo.App.1982). In *Donelson,* the court relied on section 187 of the Second Restatement which applies when parties have an express choice of law provision in their agreement. Comment c to that section states, in part:

> [Parties to a contract] may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to *effectuate the intentions of the parties.* (Emphasis added).

In the instant case, we are faced with a situation in which the application of the local law of Missouri, expressly chosen by the parties, would render the stock purchase agreement void. Application of section 351.160 of our local corporate law fails to effectuate the presumed intent of the parties to enter a valid contract. Therefore, we decline to apply the local law of Missouri to the consideration issue in the stock purchase agreement based on the principles espoused by the Second Restatement and recognized by the Western District of Missouri. The law of Delaware will be applied on the issue of consideration exchanged for the shares.

### III.  *The Delaware Approach*

■ Under Delaware law, the issuance of stock without consideration or for an insufficient consideration does not render the issuance void, but instead, ren-

ders it voidable. *Egan v. McNamera,* 467 A.2d 733, 742 (D.C.App.1983); *Highlights For Children, Inc. v. Crown,* 43 Del.Ch. 323, 227 A.2d 118, 122 (1954); Folk, Ward, and Welch, *Folk on the Delaware General Corporation Law* § 152.6 (2d ed. 1988). When a stock issuance is voidable, the relief adopted is that which is most in accord with the equities of a given case. *Blair v. F.H. Smith Co.,* 18 Del.Ch. 150, 156 A. 207, 213 (1931). Thus, appellant's contract was potentially valid pending a balancing of the equities. Normally, we would remand the case to the trial court for a balancing of the equities to determine whether equity would give effect to the contract despite the lack of consideration. In this case, we will proceed under the assumption that appellant's contract was potentially valid and that equity might have given it effect. We do so because we find that while up until the dissolution of Old Trading appellant *may* have held his stock validly under Delaware law, the dissolution of the corporation ended appellant's right to cure the defect in his consideration.

### IV.  *Effect of the Dissolution*

On June 30, 1987, Old Trading filed its articles of dissolution and on July 13, 1987, appellant dispatched a check for $90,000 to Old Trading intended as full payment of his promissory note. Appellant argues that under the law of Delaware, the corporation had a three year winding up period to collect and pay its debts. Appellant contends that this statutory period allowed appellant time after the dissolution of the Old Trading in which to pay his note and redeem his shares.

■ Appellant's argument contains two flaws. First, the Second Restatement, discussed above, employs an issue by issue approach to the choice of law. *See, e.g.,* Restatement (Second) Conflict of Laws § 188 (1971). We declined to employ section 351.160 of the General and Business Corporations Law of Missouri to the stock purchase agreement because it did not give effect to the presumed intent of the parties. Our action does not mean that other provisions of Missouri corporate law do not

apply to the agreement. It cannot be assumed that the *issue* of the fate of the stock purchase agreement upon dissolution can be decided in the same manner as the independent *issue* of consideration. Under the Second Restatement, these are separate determinations and could well be decided by the local law of different jurisdictions.

Second, irrespective of the local law applied to the issuance, the terms of the stock purchase agreement terminate that agreement upon dissolution of Old Trading. Section 11.1 of the stock purchase agreement provides, in part: "[the] agreement and all restrictions on stock transfer created hereby shall terminate on the occurrence of any of the following events ... [including] the bankruptcy or dissolution of the Corporation." Clearly, the parties intended for the agreement to terminate upon the dissolution of the corporation. This event is distinguishable from the choice of law provision which rendered the stock purchase agreement void *ab initio*.

At the date of dissolution, appellant had a voidable contract for the purchase of stock. Under neither the law of Missouri nor the law of Delaware is a promissory note adequate consideration for shares of stock. *Townsend v. Maplewood Investment & Loan Co.*, 351 Mo. 738, 173 S.W.2d 911, 914 (1943); *Highlights For Children, Inc. v. Crown*, 43 Del.Ch. 323, 227 A.2d 118, 122 (1966). Appellant did not have an enforceable right in the shares until he paid adequate consideration. His right to cure ended, by the terms of the stock purchase agreement, upon dissolution of the corporation. Appellant's tender of payment of his promissory note after dissolution was not timely.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and GRIMM, J., concur.