CHARLES Y. SCULLY, JOHN E. O'BRIEN, HARRY J. HOGG
and HARRY T. ROSENHEIM.

*vs.*

AUTOMOBILE FINANCE COMPANY and CENTRAL
SECURITY COMPANY, AND OTHERS.

*New Castle, Feb.* 20, 1920.

Where a corporation for an unlawful and fictitious consideration issued its common stock, which alone had voting power, to an associated corporation composed of the organizers of the first corporation, and the associated corporation under an exclusive agency for sale of the other's preferred stock gave to purchasers thereof shares of the common stock as a bonus, the shares so given are not to be classed as treasury stock, fully paid for and authorized to be gratuitously distributed in connection with sales of preferred stock.

An assignment to a company of a plan of doing business by which prospective purchasers of automobiles were to be assisted in buying and paying for them, the company making the purchase and holding title until the purchase money was paid in full, did not constitute a valid consideration for issuance of fully paid nonassessable shares of common stock under Constitution Art. 9, § 3, and the statutes.

While shares of stock, so long as they are not marked full paid until services have been rendered, may be issued for services to be rendered (Revised Code 1915, §§ 1934-1937), services to be rendered cannot be a valid consideration for issuance of full paid nonassessable shares of stock, since such shares can be issued only for "labor done" (Constitution Art. 9, § 3).

Under Revised Code 1915, § 1928, as to valuation of labor by directors being conclusive, the directors have no power to adjudge the value of future services as a basis for full paid stock.

Assuming that the common stock in question was issued in part for labor done and to be done for the corporation, a conscious gross overvaluation thereof by the directors would be actual fraud, rendering the subscription contract unlawful.

Where promoters of corporations A. and B. purchased shares of common stock of A. for an unlawful consideration and transferred them to company B., which made a contract to act as exclusive agent of A., for sale of its preferred stock at par for a commission, and gave to purchasers shares of common stock as a bonus, *held* that subscriptions stood as though the bonus feature had been omitted, and were enforceable.

A court of equity may declare the unlawful subscription contract to be ineffective to relieve the stockholder of the legal duty to pay the par value

of the stock, if the interests of the corporation so demand, or it be necessary to do so in order to pay creditors of the company.

Where all the holders of common stock took their shares with notice that they were bonus or gratuity shares for which they paid or gave nothing, or were put on inquiry, *held*, in a suit by stockholders to have all shares of common stock canceled, that the most equitable relief was to leave the parties as they find themselves, hold the shares of common stock assessable, and make each share show what has been paid thereon, and that it is not full paid.

Where there has been either a lack of a real valuation or a conscious and perhaps gross overvaluation, and yet some value or consideration has been given for shares of stock, a court of equity may give the holder of the stock credit in some way for what he has given as a consideration for the stock.

BILL FOR CANCELLATION OF CORPORATE STOCK. The complainants are stockholders of the Automobile Finance Company and filed the bill of complaint in this cause for the purpose of having cancelled all of the common stock of the said company. By amendment to the bill all of the common stockholders of Automobile Finance Company were made defendants. The facts, in addition to those appearing in the opinion reported 11 *Del. Ch.* 355, 101 *Atl.* 908, are sufficiently stated in the following opinion of the Chancellor.

*Herbert H. Ward*, and *Albert F. Bauerle*, of Philadelphia, Pa., for complainants.

*Robert H. Richards* and *James I. Boyce*, and *George J. Edwards Jr.*, of Philadelphia, Pa., for all defendants who have appeared in the cause.

THE CHANCELLOR. This suit was brought by four stockholders of the Automobile Finance Company to have cancelled all the shares of common stock of the company, on the ground that they had been issued without consideration and illegally. A demurrer to the original bill was overruled, answers were filed thereafter, and later an amended bill was filed and answers thereto filed. Testimony was taken, and a final hearing has been had. In the opinion filed at the time of overruling the demurrer the facts were not adequately stated, and as new facts appeared later, the important facts will now be here stated in such detail as seems necessary.

Two of the defendants, Walter H. McEvilla and Charles F. Chisholm, planned to establish through a corporation a business, the plan of which was that the corporation should advance part of the purchase money of an automobile, take title to it and turn it over to the purchaser under a form of lease, or bailment, until the company should be reimbursed payments made by it for the purchaser. To carry out the plan a Delaware charter was obtained for a corporation called the Automobile Finance Company, with an authorized capital stock of forty thousand shares, each of par value of ten dollars, of which twenty thousand shares ($200,000) were common stock and twenty thousand shares ($200,000) were preferred stock. The voting power was in the common stock only. An organization was effected by the three dummy directors, who together subscribed to one hundred shares of common stock. To carry out the plan another corporation was incorporated a day earlier, called the Central Security Company, with a capital stock of one hundred shares, each of the par value of fifty dollars, and all common stock. The same persons were the incorporators of the latter company and of the Automobile Finance Company, and they together subscribed for twenty shares. These two companies were organized practically together for a combined purpose above indicated, and the expenses of the incorporation and organization were advanced by the promoters of the plan.

The scheme above outlined was carried out. On December 11, 1916, there was the formal organization of the Central Security Company, and on December 15, 1916, the incorporators of Automobile Finance Company organized. At the first meeting of directors of the Automobile Finance Company, when the only subscribers to its capital stock and directors were the incorporators, McEvilla and Chisholm made a proposition "to turn over and assign to your corporation our plan for a general automobile purchasing and selling agency, whereby prospective buyers may purchase new automobiles of any make on the installment plan, and to devote ourselves to effectuating the business of the corporation, in exchange for twenty thousand (20,000) shares of the common stock of your corporation full paid and non-assessable par value ten dollars ($10.00) per share." It was directed by them that the shares be issued, 19,988 to Central Security Company, and three

each to Walter H. McEvilla, Henry Steubner, C. F. Chisholm and I. C. Shalkop, the four promoters, and the offer included the shares subscribed for by the incorporators. This offer was accepted by the dummy directors by a resolution worded like the offer. It was also resolved, as follows:

"That the board of directors do hereby adjudge and declare that said services and effort on behalf of the corporation is of the actual value of two hundred thousand ($200,000) dollars to this corporation, and that said plan of business and that such service in behalf of this corporation is necessary to insure the success of this corporation."

This contract was carried out by the delivery of the twenty thousand shares as directed, the incorporators transferring their shares to the Central Security Company, which company thereby acquired all but twelve shares of the common stock, the sole consideration for the issue of which was the business plan and future services of McEvilla and Chisholm.

The Central Security Company then made a contract to act as the exclusive agent for the sale of the preferred stock of the Automobile Finance Company at par for a commission, sold shares of preferred stock and gave to purchasers thereof shares of common stock expressly as a "bonus," or gratuity, and also gave other shares of common stock as an additional bonus to such purchasers as became directors of the Automobile Finance Company. All of the written subscriptions for the preferred stock contained such statements as to the "bonus" stock. Inasmuch as the Central Security Company was so acting as agent for the Automobile Finance Company, the shares of common stock which it distributed as a bonus were not to be classed as treasury stock, i. e., shares fully paid for and transferred to or made subject to the disposition of the corporation for distribution as a gratuity in connection with sales of its preferred stock.

The four complainants are holders of common and preferred stock of the Automobile Finance Company, and are directors thereof. In their bill, filed on August 7, 1917, it is claimed that the business plan was no matter or thing, service or property of any value so as to support the issuance of the common stock of the Automobile Finance Company, and that the whole scheme was a fraud. It was also alleged that as only the common stock had

a right to vote, and all of it was illegally issued, there never had been a legal organization or officers of the company, or that at most they are *de facto* officers. A demand had been made by the complainants on the directors of the company to sue to cancel the shares of common stock, and there was a failure on their part to so act for the company.

The only defendants to the original bill were the two corporations. On May 23, 1918, an amended bill was filed making as defendants all of the holders of common stock, in addition to the two corporations. The new bill was practically like the original one. In addition it was there suggested, though not prayed for, that the effect of the illegal issue of common stock would be overcome by a re-organization of the company under the direction of the Court through a receiver, who, after getting in all of the common stock, would offer it for sale at par to the owners of preferred stock.

The two corporations, McEvilla, Chisholm, Shalkop, Steubner and several other stockholders appeared and answered the amended bill, and a decree *pro confesso* has been taken as to the others who did not appear or answer.

By the answers and the proofs taken some new features were developed. On August 1, 1918, the directors of the Automobile Finance Company adopted a preamble reciting that as this Court in overruling the demurrer had declared that there was no valid consideration for the common stock, the Central Security Company had returned to the Automobile Finance Company fifteen thousand, sixteen and one-half shares of stock, and it was resolved that the necessities of the business of the company required payment of five per cent. of the par value of the common stock issued and outstanding, and that amount was assessed on all outstanding stock. And further, that that call should supersede and be a substitute for any other call. In response to this call holders of about one-half of the common stock paid the five per cent. call.

The questions raised in the cause are as to the validity of the issue of common stock, and the consequences of declaring it to have been issued contrary to the constitution and statutes of the State.

By the constitution of Delaware no corporation shall issue stock except for money paid, labor done or personal property or

real estate, or leases thereof, actually acquired by the corporation. *Article* 9, § 3. The statute provides that in the absence of actual fraud in the transaction the judgment of the directors as to the value of such labor, property, real estate or leases shall be conclusive. *Revised Code of* 1915, *c.* 65, § 14, *par.* 1928, *p.* 924.

All of the shares of the common stock of the Automobile Finance Company of par value of two hundred thousand dollars were issued pursuant to the agreement made by the company with McEvilla and Chisholm, whereby they were (1) to turn over and assign to the company a plan of doing business, and (2) devote themselves to effectuating that business. Part of the consideration, therefore, was property and the rest consisted of services to be rendered. Did either constitute a valid consideration within the meaning of the constitution and statutes of Delaware? The plan of business was an application to automobiles of plans by which prospective purchasers of property are assisted to buy and pay for the same and acquire title thereto, the company making the purchase and holding title until the whole of the purchase money is paid, in installments or otherwise, the customer in the meantime having possession under a form of bailment or lease. It was substantially the same as the Morris plan of banking. It was 'without novelty, had no element of property, was not assignable and could not in any fair sense be "acquired" by the company. Neither was it labor done, nor services rendered. It did not, therefore, constitute a valid consideration. This is equally true of the other thing which was stated as a consideration, the services to be rendered by McEvilla and Chisholm to the company. Services to be rendered cannot be a valid consideration for the issuance of full paid, non-assessable shares of stock, for these can be issued only for "labor done," i. e., after it has been done. This does not mean that shares may not be issued for services to be rendered so long as they are not marked fully paid until that condition has been fulfilled by rendering the service. By the statute shares may be issued before paid for, and will be subject to assessment either by the corporation or for the benefit of creditors up to the par value thereof, and this statute is not necessarily inconsistent with the constitution. *General Corporation Law, Revised Code, c.* 65, §§ 20-23, *pp.* 925, 926. Therefore, the issue in this case of

the shares of common stock as full paid and non-assessable was, without lawful consideration.

The pretense of a valuation by the directors of the consideration was ineffective to validate the consideration. Although there were two things offered as a consideration, the business plan and future services, the directors after accepting the proposition of McEvilla and Chisholm adjudged that "said service and effort on behalf of the corporation is of the actual value of two hundred thousand dollars to this corporation," and so did not include the business plan in the valuation. There was no valuation of the plan of business, and the directors had no power to adjudge value to future services as a basis for full paid stock. Indeed, by their subsequent conduct the parties to that subscription agreement in effect concede that there was no lawful consideration for the common stock, for the corporation has so declared and levied an assessment thereon, and McEvilla and Chisholm have paid their assessments. This is probably not conclusive on other stockholders, and the complainants do not admit that the action of the company in making the assessment was valid.

But even assuming, as was contended, that the common stock was issued in part for labor done and to be done for the corporation, the business plan being a fruit of the labor performed, there was a conscious gross over-valuation thereof by the directors. Testimony was offered to show the services performed by McEvilla and Chisholm before the incorporation in framing the business plan, and of Chisholm since the incorporation, and there was testimony that the services of Chisholm were worth five thousand dollars, but no valuation was made of those of McEvilla. Obviously, then, there was an over-valuation of at least ninety-seven and one-half per cent., when something worth not more than five thousand dollars was valued at two hundred thousand dollars.

The legal effect of this conscious over-valuation has not been distinctly declared in this State where the corporation was a solvent, going concern. In *Ellis v. Penn. Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666, the contract of subscription was valid, and there was no evidence of an over-valuation of the consideration for the shares of stock. There the question arose between a stockholder who had paid full value for his shares and other stockholders who had

failed to deliver any but an insignificant part of the consideration for the stock. The Chancellor expressed the view that no pretended exercise of judgment could give value to that which had none.

In *Cooney Co. v. Arlington Hotel Co.*, 11 *Del. Ch.* 286, 101 *Atl.* 879 (affirmed by the Supreme Court on appeals of *Du Pont, et al., v. Ball, et al.*, 11 *Del. Ch.* 430, 106 *Atl.* 39), the holders of stock of an insolvent company expressly and admittedly received as bonus stock were held liable to pay thereon such assessments as was necessary to pay the creditors of the company. No valuation of the consideration for the stock had been made by the directors.

In New Jersey where the legislation is practically identical with that in Delaware, such conscious and intentional over-valuation of property is actual fraud. *Tooker v. National, etc., Co.*, 80 *N. J. Eq.* 305, 84 *Atl.* 10 (1912).

In this case, then, a conscious over-valuation by the directors, even if made, would have been actual fraud and rendered the subscription contract unlawful. What is the legal consequence of so holding? The complainants contend that all of the shares of common stock were issued illegally and should be cancelled; that the assessment made by the company was invalid and not binding even on those who paid it; and that they could recover back the money so paid. This has been discussed in two cases in Delaware and settled by the Supreme Court.

In *Ellis v. Penn. Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666, the complainant was a stockholder who had paid par value for his shares and sought relief against other shareholders who had not delivered to the company the property for which shares of stock had been issued to them, and it was there rightly held that the complainant was entitled to relief. But the failure to deliver the consideration did not make the subscription contract *ultra vires* or unlawful. It was not prohibited by law, and the statement by the Chancellor apparently to that effect in that case was inaccurate.

Subsequently in the case of *Cooney Co. v. Arlington Hotel Co.*, 11 *Del Ch.* 286, 101 *Atl.* 879 (reported in the Supreme Court under the title of *Du Pont, et al., v. Ball, et al.*, 11 *Del. Ch.* 430,106 *Atl.* 39), where creditors of the Arlington Hotel Company, an insolvent corporation, sought through a receiver to enforce an

assessment on bonus shares, it was urged that the issue of the shares was *ultra vires* and void, and that the stockholders were not liable to assessment, But the Supreme Court (11 *Del. Ch.* 440, 106 *Atl.* 44) considered that the company had the power to issue the stock, but that the agreement to issue it without payment was *ultra vires* and void, and cited apparently with approval from the case of *Rosoff v. Gilbert, etc., Co.*, (*D. C.*) 221 *Fed.* 986, a statement that the agreement to take less than par being *ultra vires* was void, but that the company could have maintained an action against the shareholders for an assessment. The Supreme Court of Delaware said on this subject in the *Arlington Hotel Case:*

"The company in the present case having the right to issue the amount of stock that was issued, the only act that was *ultra vires* and void in the transaction was the issuance of the stock without its being paid for and the agreement that it was full paid and non-assessable. In legal effect, therefore, it was the same as though it had been issued without any such agreement.

"The law of this State contemplates that stock may be issued contrary to the statute, that is, without being paid for, and if it is so issued the acceptors are made liable to the creditors of the company to the extent of its par value. If the stock issued without consideration is void and, therefore, non-assessable for the payment of creditors' claims there was no reason for the law that provides for its assessment. The law means, and practically says: Corporate stock shall not be issued without valid consideration, but if it so issued, contrary to law, the acceptor will be bound to pay its par value if the debts of the company cannot be paid otherwise."

This means that the subscription is enforceable; that the part which contemplates the issuance of shares of stock for nothing is void; and that the subscription stands as though the bonus feature had been omitted. The distinction drawn is between declaring the issue of stock to be void and declaring that the contract to issue stock without statutory consideration is unlawful and void, the latter leaving unimpaired the obligation to pay for the stock when and as required by the corporation, or when needed to pay creditors. It is true this decision was made in a case where the corporation was insolvent, but the principle there adopted is equally applicable to all cases and to a case where the corporation is a solvent, going, prosperous concern. A court of equity may declare the unlawful subscription contract to be ineffective to relieve the stockholders of the legal duty to pay the par value of

the stock if the interests of the corporation so demand, or it be necessary to do so in order to pay creditors of the company, or if for any reason it be equitable and just to do so.

There are cases elsewhere, especially in New York, which hold otherwise, and in some states, such as Wisconsin, shares of stock issued contrary to the statute are declared to be void. A different principle is applicable to unlawful executory contracts.

Under the circumstances of this case, what is the appropriate form of relief? All of the holders of common and preferred stock are parties to the cause. A prime consideration is that all of the holders of common stock took their shares with notice that they were bonus or gratuity shares, for which they paid or gave nothing (except perhaps Chisholm), or else they were put on inquiry, as were the shareholders held to be in *Cooney Co. v. Arlington Hotel Co., supra*. Indeed, it is admitted by solicitors for all the parties who have appeared that the holders of common stock are *in pari delicto*, and the Automobile Finance Company has assumed that the stock is not full paid, but is assessable. It is also true that even the shares for which the incorporators subscribed have lost their identity as such.

The most equitable and appropriate relief in this case is to leave the parties as they find themselves; hold the shares of common stock assessable by the corporation for the purposes of the company; and in order to protect the holders of the common stock and also any transferees and the public, require that each share shall be made to show what has been paid or credited thereon, and that they are not full paid. The relief advocated by the solicitor for the complainants is that all of the common stock be declared to be void, and that a receiver be appointed to sell the common stock under the direction of this Court. It was not made clear who would issue the shares, and how the new regime could be inaugurated, and the plan does not seem fair, practicable or effective.

It is urged against this that the control of the company is left in the hands of those who have acquired many shares of common stock gratuitously, and it does appear that seven persons, holders of two thousand and eighty-seven shares of common stock out of the four thousand nine hundred and seventy-one and one-half shares outstanding, hold no preferred stock, and (except per-

haps Chisholm) have given nothing to the company; and it also appears that other persons hold common stock as gratuities, though not received as a bonus with their preferred stock. But there is neither allegation nor proof of mismanagement, or collusive attempt to use control of the company for any improper purpose, or to the detriment of the shareholders. This last objection does not seem, therefore, to have weight.

Is Chisholm entitled to compensation for services rendered by him, and if so, how much and how will it be allowed to him? Under ordinary circumstances where there has been either a lack of a real valuation, or a conscious and perhaps gross over-valuation, and yet some value or consideration was given for shares of stock, a court of equity to do full justice may, where it is possible to do so, give the holder of the stock credit in some way for what is found by it to have been given as a consideration for the stock. In *Ellis v. Penn. Beef Co.*, 9 *Del. Ch.* 213, 220, 80 *Atl.* 666, it was intimated that this might be done, though in that case there was no opportunity to do so. This view is supported by the case of *Vineland, etc., Co. v. Chandler*, 80 *N. J. Eq.* 437, 85 *Atl.* 213, *Ann. Cas.* 1914A, 679.

It would seem that Chisholm could be most fittingly compensated for his services by allowing him as a payment on the shares held by him such sum as his services to the company were worth. This would be paying him in the way he expected to be paid, viz.: in shares of common stock and not money. From the testimony submitted it is clear that his services were not worth five thousand dollars to the company, and that a credit of five per cent. on each of the fourteen hundred and ninety-seven shares of common stock held by him would be a fair allowance therefor. This sum so allowed would be endorsed as payment *pro rata* on the shares of common stock of the company held by him, or otherwise as may be provided in the decree.

Inasmuch as the complainants as stockholders have by this suit been instrumental in putting on a legal basis the holdings of the common stock to the advantage of all of the stockholders of the Automobile Finance Company, the costs should be paid by that corporation.

Let a decree be entered accordingly.

## Supplemental Opinion.

After considering with the solicitors for the respective parties the form of decree to be entered in this cause, the Chancellor filed the following supplemental opinion:

THE CHANCELLOR.  The form of decree has given me much concern.  The position of the complainants that no lawful consideration was given for the shares of common stock was adopted by me, but for the reason which I have stated I do not agree that I should adjudge that they should be cancelled, as prayed for by the complainants.  None of the other relief asked for by the complainants in the formal prayers of the bill should be granted, for an accounting of the shares has already been made and the injunctive relief is either unnecessary or unmerited.

In the bill, and outside the prayers contained in it, the complainants facing the effect upon the corporate existence of the Automobile Finance Company of a finding invalidating all the shares of common stock suggested that the corporation be reorganized through a receiver to be appointed by the court; but as I did not approve of this suggestion, it was necessary for me to adopt some other plan to afford suitable relief to all the stockholders, in view of my conclusions as to the issues raised by the bill.

A simple declaration respecting the consideration for the common stock, which was as far as I could go along with the complainants, would have been ineffective to settle the rights of the stockholders as affected by the return of the shares by the Central Security Company and the assessment laid by the company on the common stock.  I have, therefore, framed a decree validating the assessment made by the directors; requiring a note to be made upon the certificates for shares of the payment of the assessment; restraining transfers of the shares until the note be so made; and determining the status of the shares of common stock returned by the Central Security Company.  In addition, there is an adjudication as to the rights of Charles F. Chisholm as to compensation.

By this decree I believe the issues raised are disposed of, even if it follows lines of procedure other than those suggested by the complainants.

The decree entered was as follows:

On this 3d day of March, A. D. 1920, the above cause having been heard on the bill, amended bill, the answers and testimony and exhibits taken and presented before the Chancellor,

(1)   And it appearing to the Chancellor that all of the shares of common stock of the Automobile Finance Company, amounting to twenty thousand (20,000) shares, were originally issued as fully paid stock, though no lawful consideration therefor was received by said corporation; that all of the present holders of said shares acquired them with knowledge of that fact, or with knowledge that their shares were bonus stock; that all of the holders of said shares are parties to this cause; that the said corporation is solvent, prosperous and actively engaged in carrying on the business for which it was created; that only holders of shares of the common stock of said corporation have a power to vote at meetings of the stockholders of said company; that since the filing of the bill the board of directors of said company on the 1st day of August, A. D. 1918, in order to enforce the rights of the company, and purporting to act under the authority of section 21 of the General Corporation Law of Delaware, adjudged that the necessities of the business of the company required that there be collected five per centum of the par value of each of said shares of common stock issued and outstanding, and assessed said sum thereon, and that the holders of about one-half of said shares have paid to the treasurer of the company the sum so assessed; that equal justice will be done to all of the holders of the said common stock, to the other stockholders of said company and its creditors by declaring that though the said shares were originally issued without lawful consideration, the said company by its directors had under the circumstances of this case a legal right to enforce payment of the par value thereof, or of so much thereof as the necessities of the business of the company should require:

(2)   It is therefore ordered, adjudged, and decreed by the Chancellor, that the said action of the board of directors of the Automobile Finance Company in assessing upon each of said shares of common stock issued and outstanding the sum of fifty cents (50c), being five per centum of the par value thereof, to be used when collected for the necessities of the business of said company,

be and it is hereby declared to be valid and legal, and within the powers of said board of directors, and that said shares are subject to other duly made assessments up to the par value thereof.

(3) And further, that when such assessment has been or shall hereafter be paid on any shares of the common stock of the said Automobile Finance Company, the treasurer thereof shall place on the face of the certificates for such shares a note or memorandum of such payment, and a further statement that said shares are assessable up to the par value thereof.

(4) And further, that none of the shares of common stock of the Automobile Finance Company issued and outstanding shall be transferred until the said note or memorandum be so endorsed thereon.

(5) And further, that the said fifteen thousand and sixteen and one-half (15,016½) shares of common stock of said Automobile Fianance Company, received by it from the said Central Security Company, may be issued by said Automobile Finance Company as new stock, and as though never before issued.

(6) And it further appearing to the Chancellor that the said Charles F. Chisholm is entitled to receive from the said Automobile Finance Company the sum of seven hundred and forty-eight dollars and fifty cents ($748.50) as compensation for services rendered by him to it,

(7) It is ordered, adjudged, and decreed by the Chancellor that the said sum of seven hundred and forty-eight dollars, and fifty cents ($748.50) be allowed the said Charles F. Chisholm as a credit, or payment, on account of the par value of the shares of common stock of said company held by him; and that there be placed on the face of each certificate for shares of such stock held by him a statement signed by the treasurer of said company that a proportionate part of the said sum of seven hundred and forty-eight dollars and fifty cents ($748.50) has been paid on account of the par value of the shares represented by such certificate, or at the option of the said Charles F. Chisholm, that the treasurer of the company make such endorsement on the certificates of shares of common stock held by the said Chisholm as will show that the shares of such stock to the extent of seven hundred and forty-eight dollars and fifty cents ($748.50) are full paid.

(8) And further, that the costs of this cause, hereby taxed at the sum of two hundred and ninety-four dollars and twenty-eight cents ($294.28), be paid by the Automobile Finance Company within thirty days from the date hereof.

NOTE: An appeal was taken to the Supreme Court, and the Chancellor's decree affirmed, there being an equal division of opinion of the Judges sitting.