MATHIAS H. BAKER,

*vs.*

BANKERS MORTGAGE COMPANY, a corporation of the State of Delaware, ALFRED SOHLAND and DORA SOHLAND, and THE HARRISBURG CORPORATION, a corporation of the State of Delaware, and SAMUEL FISHMAN.

*New Castle, May* 28, 1926.

*Caleb S. Layton* and *James R. Morford* of the firm of Marvel, Layton, Hughes & Morford, for complainant.

*Aaron Finger*, for defendants Alfred Sohland and Dora Sohland.

THE CHANCELLOR. The evidence adduced in this cause is very voluminous and the exhibits numerous. I shall not burden this opinion with a detailed discussion of the evidence and exhibits, with the view of showing the arguments by which my conclusions upon the facts are arrived at. It will be sufficient simply to state the fact findings upon which the decree entered will as a matter of law be based. These findings are:

That Sohland was not only president of the Harrisburg Corporation and the Bankers Mortgage Company, but he also succeeded in dominating the corporate control of both corporations.

That the stock of the Bankers Mortgage Company, sought by the bill to be canceled, was issued in consideration of the promissory note of the Harrisburg Corporation, the subscriber, secured by shares of stock of the Harrisburg Foundry & Machine Works deposited as collateral.

That the note of the Harrisburg Corporation was worthless, and the Harrisburg Foundry & Machine Works stock was, if not entirely worthless for collateral purposes, at all events extravagantly and grossly over-valued as a fair and adequate security for the note, and that Sohland, who in reality negotiated the deal, had no reasonable ground to believe otherwise.

That the loan transaction and the payment for the stock were fictitious, simply a paper affair, showing plausibly on the books, but at the bottom being nothing more than what in the parlance of the street, is known as a "kiting" of checks, accompanied by a worthless note, with grossly insufficient collateral.

That the whole transaction was simply a scheme on the part of Sohland to unload his Harrisburg Foundry & Machine Works stock in exchange for stock of the Bankers Mortgage Company; he, through the corporations in his control, using them to effectuate his purpose.

These being the facts, what is the signifiance which the law attaches to them? Two considerations appear as suggesting the propriety of the relief which the bill seeks. These will now be noticed.

First. Was the promissory note of the Harrisburg Corporation, secured as it was by the collateral referred to, a lawful consideration for the stock? In answering this question, the feature of

the collateral accompanying the note may be disregarded for the reason that under the finding of fact as to the collateral's value it was worthless. The case in this aspect of it therefore presents the question of whether the bare promissory note of the subscriber to stock is such a consideration as meets the requirements of our constitutional provision defining what consideration may be received for stock of a Delaware corporation. That provision is found in *Article* IX, § 3, of the *Constitution*, and is as follows:

"No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation."

In *Cahall, Rec'r., v. Lofland, et al.*, 12 *Del. Ch.* 299, 114 *A.* 224, the Chancellor held that the unsecured promissory note of a subscriber is neither "money paid" nor "property actually acquired" within the meaning of the constitutional clause just quoted. The case in which this ruling was made went to the Supreme Court on appeal. 13 *Del. Ch.* 384, 118 *A.* 1. The point, however, as to the sufficiency of the note as a consideration was neither affirmed nor denied by the Supreme Court, that court resting its decision on other grounds. The question, therefore, not being closed by a Supreme Court ruling, I shall accept the conclusion of the Chancellor in the case above referred to when the same was before him. My own views are so in harmony with his conclusion that I do not deem it necessary to recanvass the subject. The stock in question therefore was issued without lawful consideration. The corporation is entitled to have the *status quo ante* restored by a cancellation of the stock and a return of the unlawful consideration. The presence of a part of it in the hands of Dora Sohland and the intervener, Fishman, as hereinafter stated, cannot serve to alter the result.

Second. But if the ground first mentioned is not sufficient to support a decree in favor of the complainant, what follows is. In *Lofland, et al., v. Cahall, Rec'r.*, 13 *Del. Ch.* 384, 118 *A.* 1, the Supreme Court held that directors breach their fiduciary duty to their corporation by issuing to themselves stock in exchange for their own unsecured promissory notes, the stockholders being ignorant and never knowingly approving of the transaction, and the corporation, or its receiver, is entitled to treat the issue as void. The

principle underlying that decision denounces the issue in this case as unlawful and entitles the corporation to treat it as void. For here, in view of the facts found, the issuance of the stock was to the injury of the Bankers Mortgage Company and to the benefit of Sohland, who dominated both the subscribing and issuing corporations and caused them to take the action they did as a means of turning over his undesirable Harrisburg Foundry & Machine Works stock in exchange for the Bankers Mortgage Company stock. He came out of the transaction with $150,000 of Bankers Mortgage Company's stock and the Bankers Mortgage Company has in place thereof a worthless note, together with collateral which the evidence shows ought then to have been regarded as of little, if any, value, and appears now to be entirely worthless. He used his position of influence and power in the Bankers Mortgage Company to profit himself at its expense. This was in clear breach of his duty as president and director of the Bankers Mortgage Company. The other members of the board are shown by the overwhelming weight of the evidence to have been either the subservient or the confiding instruments of his controlling influence. They simply registered by their vote what his wish dictated. Some of the directors frankly state that they voted as Sohland desired because of fear of the consequences of his displeasure against them if they did otherwise, while others say that their subjection to his wishes was due to an unbounded confidence in his judgment and implicit faith in his representations. The board as a whole practically abdicated its function of judgment and allowed Sohland to frame its conclusions without any independent judgment on the part of its members or any inquiry touching the proposed corporate action beyond that addressed to Sohland himself, whose assurances were vigorously given and implicitly accepted. The circumstances show clearly that the issuance of the stock for an unlawful consideration benefited Sohland only and the whole transaction was in reality one between Sohland, the beneficiary in his private capacity, on the one side, and himself, as the controlling and dominating influence in the injured corporation, on the other side. He cannot retain the advantage and the corporation be made to endure the injury which such a bargain entails.

All the stock acquired as a result of the scheme must be canceled and the so-called consideration received therefore returned.

This conclusion applies equally to the stock standing in the name of Dora Sohland and in the name of Samuel Fishman as to that which stands in the name of Sohland. This is for the following reasons: As to Dora Sohland, her solicitor at the argument admitted that the stock standing in her name is subject to the same fate as is her husband's. As to Fishman, he was ordered to produce his testimony in support of his intervening answer on or before September 1, 1925. He failed to produce any testimony, whatever. Neither did he request an enlargement of the time. His answer sets up the defense of a purchaser for value without notice. The allegations of the answer, however, are not evidence in the cause. *Rule* 38 of this court provides that:

"The answer shall not be evidence for the defendant at the hearing, unless the cause be heard on bill and answer."

The hearing not being on bill and answer, the rule applies. There is some evidence in the record to the effect that Fishman gave value for the stock acquired by him. This evidence was from the lips of Sohland, but was produced after the time when the limit for Fishman's production of testimony had expired. Sohland was producing testimony in defense of his own case and the record justifies the inference that his solicitor in offering the evidence as to Fishman conceived that it was pertinent to Sohland's defense, and that it was therefore not offered in behalf of Fishman. But upon the point of notice on Fishman's part, and disregarding for the moment his default under the order and assuming that he was in position to offer testimony upon the date when Sohland was testifying, it is still true that there is not one word of competent testimony to the effect that Fishman did not possess full and complete notice of all the facts surrounding the status of the stock he was purchasing. Fishman, therefore, has failed to maintain the defense which his intervention set up.

Let a decree be prepared accordingly.

Note.—For opinion as to form of decree, see *post p*. 209.