HIGHLIGHTS FOR CHILDREN, INC., a corporation of the
State of Delaware,
Plaintiff,

*vs.*

GENEVA M. CROWN, Executrix of the Estate of Howard Crown,
Deceased,
Defendant.

*New Castle, October 7, 1966.*

*Blaine T. Phillips,* of Berl, Potter & Anderson, Wilmington, and *Charles F. Clarke,* of Squire, Sanders & Dempsey, Cleveland, Ohio, for plaintiff.

*Edmund N. Carpenter, II,* of Richards, Layton & Finger, Wilmington, and *Russell P. Herrold, Jr.,* of Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendant.

MARVEL, Vice Chancellor: On March 11, 1960, according to the amended complaint, the original defendant Howard Crown, now deceased, who had for some time been a director of the plaintiff Highlights for Children, Inc., and a friend of persons intimately connected with plaintiff's operations, entered into an agreement with the latter under the terms of which he agreed to enter plaintiff's employ on May 1, 1960 at a fixed salary on condition that he purchase over the ensuing one hundred twenty days a substantial number of plaintiff's shares at a price of $15 per share. Plaintiff alleges that such agreement was prepared by the deceased Howard Crown. The agreement further provided that the consideration for the purchase of said stock would be furnished by the delivery to plaintiff of a ten year promissory. note or notes bearing 2% interest per annum, and, further, that plaintiff would have the option of repurchasing all or a portion of said shares on a stipulated formula in the event Mr. Crown's employment were to be terminated prior to the completion of five years of service.

During the following one hundred twenty days fixed in the parties' agreement, a number of treasury shares became available for issuance to Mr. Crown and were issued to the original defendant in consideration of the delivery to the corporation of his ten year promissory note, which note was thereafter admittedly paid off by Mr. Crown some time before the present dispute arose and the pending suit filed.

On April 11, 1960, an annual meeting of plaintiff's stockholders was held. And while plaintiff attacks the validity of action taken at such meeting, it concedes that at such meeting the March 11, 1960 agreement between plaintiff and Crown was apparently approved and authorization purportedly given to the issuance of additional stock to the original defendant, unissued shares being authorized for such transaction inasmuch as treasury stock was not available. On April 22, 1960, such additional shares above referred to were issued to the original defendant, who, in return, delivered ten year promissory notes as consideration. The complaint concedes that plaintiff thereafter received a cash payment of $500 against the original defendant's notes but alleges that the balance due remains unpaid.

Seeking a declaratory judgment on the basis of the provisions of Article IX § 3 of the Constitution of Delaware, "Vol. 1, Del.C.Ann. p. 321," which provides that stock of a Delaware corporation shall not

be issued "* * * except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation * * *", and questioning the effect of claimed director approval and stockholder action taken at plaintiff's April 11, 1960 annual meeting, plaintiff prays that the Court determine whether or not the authorized but unissued stock issued to the original defendant on April 22, 1960 should be cancelled as invalid and whether or not the sum of $13,170 received by Howard Crown, the original defendant, as distributions on said shares, should be ordered returned to plaintiff.

In his answer, the original defendant admitted the issuance to him of treasury shares as alleged in paragraph 6 of the complaint but averred that such shares were issued not only in consideration of his ten year promissory note, long since paid, but also in consideration of his agreement to give up his law practice and to serve as a full time employee of plaintiff. His answer states that he is without knowledge as to whether or not the stock issued to him on April 22, 1960 was authorized but unissued and alleges that in any event, in addition to the ten year promissory notes furnished by him for said shares, his giving up of his law practice and his subsequent agreement to serve as a full time employee of plaintiff's furnished additional consideration for the issuance of such shares. Such answer further alleges that valuable collateral was furnished for said notes and that plaintiff accepted interest payments tendered in August, 1961, and in February, 1962.

Also pleaded were a number of affirmative defenses, including acquiescence, estoppel and ratification. A counterclaim was also filed for the return of shares of stock allegedly owned by the counterclaimant but held by plaintiff as collateral, Mr. Crown having allegedly tendered to plaintiff on April 19, 1963, prior to the time that he learned of the filing of this action, the full amount due on the purchase by him of said stock. Also sought was the return of moneys paid for plaintiff's stock in the event that all or any of it should be ordered cancelled. However, the prayers of the answer are for a judgment upholding the validity of the issuance of plaintiff's stock to Howard Crown and the delivery to him of the shares allegedly due him.

In reply to the counterclaim, plaintiff sets forth as a defense the provisions of Title 8 *Del.C.* § 143, which at the time forbade loans by a corporation which were secured by its own shares. Plaintiff admits

in such reply the tender on the original defendant's part of $26,442.94, the amount due on his promissory notes and its refusal to accept such tender or to deliver stock certificates pledged as collateral by Mr. Crown, but realleges that the stock in question was invalidly issued and that defendant must pay over to plaintiff the amounts received by her husband as distributions on such allegedly invalidly issued shares minus payments made by the decedent. Plaintiff concludes its reply by asking that once this is done that the shares in issue as well as the notes delivered in exchange therefor be cancelled.

Plaintiff, however, now seeks an order directing cancellation not only of the authorized and unissued shares registered in the name of Howard Crown or in that of the defendant but also cancellation of the treasury shares issued to Crown at an earlier date. Such application, made in the form of a motion for summary judgment, is directed towards cancellation of all shares issued to Mr. Crown on the basis that the answer to the amended complaint placed in issue the validity of both treasury and original shares issued to Crown, although plaintiff in its counterclaim stated that it "* * * renews the prayer of its complaint * * *". In brief, plaintiff now contends that all of its shares issued to Howard Crown were supported by promissory notes and not by the type of consideration recognized in the relevant Delaware constitutional provision (Article IX, § 3), which, it is contended, applies to the issuance of treasury shares as well as to authorized and unissued shares. Therefor, according to plaintiff, all shares must be cancelled. See also 8 *Del.C.* § 152. It is also contended by plaintiff that alleged board and stockholder action designed to ratify and confirm the improper issuance of plaintiff's shares to Mr. Crown was ineffective, and further, that Crown, while a director and alleged sole counsel for plaintiff, improperly manipulated corporate action so as to acquire shares of plaintiff which had been issued without legal consideration. Next, it is contended that by employment of the device of a reduction of capital, Mr. Crown enriched himself at the expense not only of the corporation but of those who had created its capital. Finally, plaintiff argues that it is not guilty of laches, acquiescence or estoppel, that it has not ratified the transaction which it attacks, and that it is not disqualified to pursue the present action.

In the leading case of *Baker v. Bankers Mortgage Company,* 15 *Del.Ch.* 183, 133 *A.* 698; 15 *Del.Ch.* 209; 135 *A.* 486, the Chancellor,

relying on the precedent of *Cahall v. Lofland,* 12 *Del.Ch.* 299, 114 *A.* 224, ruled that an unsecured promissory note of a subscriber to stock (the purported collateral being found worthless) is neither "money paid" nor "property actually acquired", and that as the stock in question was thus issued without lawful consideration it must be cancelled and the *status quo ante* restored by the return of the unlawful consideration. This ruling was affirmed by the Supreme Court of Delaware in *Sohland v. Baker,* 15 *Del.Ch.* 431, 141 *A.* 277, 58 *A.L.R.* 693, which went on to rule specifically that a promissory note, being a mere unsecured promise to pay, is not property actually acquired by the corporation. The Court, after noting that the collateral pledged with said note had been found to be worthless, quoted from several Texas cases, making it clear that in its opinion the Delaware Constitution required that the capital of a Delaware corporation should be composed of substantial assets and that its stock be actually paid in rather than supported by the obligations of its subscribers. It is also clear that the Court considered that the critical date for determining whether or not the collateral furnished as consideration for the issuance of stock had any value was at the time stock is actually issued.

Relying on this ruling and the principle expressed in the opinion of the Supreme Court in *Lofland v. Cahall,*[1] 13 *Del.Ch.* 384, 118 *A.* 1, namely that a court can not go outside of a corporate resolution having to do with the issuance of stock to find other consideration, plaintiff's position is that it is entitled to cancellation of all shares issued to Mr. Crown inasmuch as his employment contract with plaintiff contemplated the initial purchase by Crown of shares of plaintiff's stock by delivery of ten year promissory notes which were merely promises to pay lawful consideration. Finally, plaintiff points out that in the case of *McCarthy v. Texas Loan & Guaranty Co.* (*Tex.Civ.App.*1911), 142 *S.W.* 96, upon which the Supreme Court of Delaware relied in *Sohland v. Baker, supra,* the Texas court had observed that not only was the note there involved endorsed but that the stock issued was also deposited as collateral, it apparently being the view of the Texas court that no security could serve as collateral under the circumstances involved.

---

1. In this case, however, the Court noted: "While it may be true, as claimed by the appellee, that a promissory note is not property 'actually acquired,' we are not required to say, that in no case can a promissory note be so regarded."

Despite its argument on its briefs, including reliance on Ballantine, Corporations, § 260 (Rev.Ed.1946), and *Bronson v. Bagdad Copper Corp.,* 38 *Del.Ch.* 340, 151 *A.2d* 677, plaintiff apparently recognized at the time of the filing of its complaint that under Delaware law the consideration for the issuance of treasury shares need not meet the standard of that constitutionally required for an original issue. On such basis it apparently justified its failure to attack the issuance of treasury shares to two other corporate employees. Such doubt would also seem to explain the silence of plaintiff's amended complaint concerning the status of its treasury shares issued to the original defendant.

In the *Sohland* case, the Chancellor, after laboriously sifting out the evidence, concluded that the collateral there deposited had no value. Here, on the contrary, according to the defendant, collateral in the amount of more than $200,000 is presently pledged to guarantee payment for the original shares issued to Mr. Crown. The question thus posed is whether or not such collateral, if established, can serve as consideration.

First of all, there appears to be a recognized distinction between the issuance of treasury stock as opposed to the issuance of original stock. In the case of *Belle Isle Corporation v. MacBean,* 30 *Del.Ch.* 373, 61 *A.2d* 699, the Chancellor, after stating "* * * I think it clear that the board of directors are not required under all circumstances to sell treasury stock for at least its par value * * *", cited *Furlong v. Johnston,* 209 *App.Div.* 198, 204 *N.Y.S.* 710, aff'd 239 *N.Y.* 141, 145 *N.E.* 910; 85 *U.Pa.Law Review* 622, in which the New York courts in dealing with the problem of payment for stock by means of a promissory note, drew a distinction between the issuance of treasury stock as opposed to the issuance of original shares.

Furthermore, in addition to the question as to whether or not treasury shares may here serve as consideration for the issuance of original shares, it is established that the issuance of original shares in violation of Article IX, § 3 of the Delaware Constitution does not make a subscription contract ultra vires or unlawful, the absolute statement of the Chancellor to the contrary in *Ellis v. Penn Beef Co.,* 9 *Del.Ch.* 213, 80 *A.* 666, having been corrected in *Scully v. Automo-*

*bile Finance Co.,*[2] 12 *Del.Ch.* 174, 109 *A.* 49. Accordingly, a corporation may seek to assess stockholders who have paid less than par for their stock, *Du Pont v. Ball,* 11 *Del.Ch.* 430, 106 *A.* 39, 7 *A.L.R.* 955. See also *Finch v. Warrior Cement Corp.,* 16 *Del.Ch.* 44, 141 *A.* 54, in which the Court additionally observed:

> "Acquiescence and participation in an issue of stock, without consideration or for an insufficient consideration, will bar the right of the assenting stockholder to complain against its issuance. In this state the issuance of stock without consideration does not render the issue void, though an attempt to exempt the issue from liability to pay lawful consideration therefor is void. *Du Pont et al. v. Ball et al.,* 11 *Del.Ch.* 430, 106 *A.* 39, 7 *A.L.R.* 955; *Scully et al. v. Automobile Finance Co. et al.,* 12 *Del.Ch.* 174, 109 *A.* 49. The dictum found in *Ellis v. Penn Beef Co.,* 9 *Del.Ch.* 213, 80 *A.* 666, that stock issued without consideration is absolutely void appears thus to be not expressive of the law as was recognized by the Chancellor who uttered it in the later case of *Scully et al. v. Automobile Finance Co.,* just referred to."

Plaintiff recognizes that invalidly issued original stock may be treated as voidable rather than void but contends that such principle merely permits the corporation to elect to treat stock so issued as valid and thereafter seek to recover the balance due from the stockholder who has paid less than par. Compare 8 *Del.C.* § 156 which permits the issuance of partly paid shares.

Defendant, in reply, takes the position that *Maclary v. Pleasant Hills,* 35 *Del.Ch.* 39, 109 *A.2d* 830, is authority for the proposition that where the equities so require, a stockholder may remedy his failure to have paid proper consideration for stock at the time of its issuance. In the cited case, the Chancellor found, after final hearing, that moneys allegedly advanced for the purchase of stock had been actually loaned to the corporation and that no basis for a finding that shares had been issued for valid consideration had been demonstrated. Nonetheless, he went on to find that substantial equities existed in

2. In this case the Court also noted: "Services to be rendered cannot be a valid consideration for the issuance of full-paid, non-assessable shares of stock * * *. This does not mean that shares may not be issued for services to be rendered so long as they are not marked fully paid until that condition has been fulfilled by rendering the service."

favor of the individual defendants, one of whom, Robert P. Maclary, not only had labored diligently to make a housing dream come true, but had also loaned substantial sums to the corporation involved. Accordingly, the Chancellor granted the individual defendants " * * * an election to decide whether they desire to retain such shares upon the condition that they pay the original price plus interest, rather than have them cancelled * * *". It is to be noted, however, that credit was allowed the defendant Robert Maclary for $500 advanced to the corporation prior to the adoption of the resolution which had authorized the issuance of 100 shares of stock to him in return for what the Chancellor found were in fact loans to the corporation. On the other hand, there is no indication in the opinion that any of the other individual defendants to whom stock had also been issued had paid anything on account.

Finally, I find it significant that the Supreme Court of Delaware, in deciding the option case of *Beard v. Elster,* 39 *Del.Ch.* 153, 160 *A.2d* 731, in which it held that lapse of time and subsequent performance of services by an optionee "* * * will validate the purchase and will supply consideration * * *" for the acquisition of stock options, cited the case of *Scully v. Automobile Finance Co., supra.*

On this motion for summary judgment, the facts of record must be viewed in the light most favorable to the defendant. And in moving for summary judgment, plaintiff carries the burden of demonstrating with reasonable precision that there are no disputed issues of material fact, which, if resolved upon trial in favor of the original defendant, would establish that defendant is equitably entitled to retain shares of plaintiff held by her as executrix after paying for them in full. In my opinion, plaintiff has not carried this burden, and the issue of the voidability of plaintiff's stock issued to the original defendant must be tried. Compare *Melson v. Michlin (Del.Supreme Ct.)* 223 *A.2d* 338. Assuming but not deciding that the shares issued to Mr. Crown are *prima facie* subject to an application for cancellation on plaintiff's election, a balancing of the equities after trial may lead to the conclusion that the drastic relief sought by plaintiff should not be granted. All of the circumstances concerning Howard Crown's move from his law firm to a salaried job with plaintiff; the development of the note plan which defendant claims was suggested by plaintiff's president; the details concerning the March 11, 1960 directors meet-

ing at which at least one director was allegedly "present by telephone", as well as those of the annual meeting of stockholders of April 11, 1960; the precise number of treasury shares issued to Crown; the strange change of attitude towards Crown on the part of plaintiff's board following his departure on vacation in 1962, and the factual details of the various defenses advanced by the defendant all must be explored at a full hearing. As to the latter, compare *Elster v. American Airlines,* 38 *Del.Ch.* 195, 148 *A.2d* 343. And while Howard Crown and plaintiff's president at the time of the transaction in issue are dead, other directors, officers and employees of plaintiff who have knowledge of material, relevant facts survive, as do members of the law firm which represented plaintiff at the time of the transaction.

Finally, the facts adduced at trial may disclose that Mr. Crown in fact breached his fiduciary duties to his co-directors and at the same time failed to live up to the ethical standards expected of a lawyer. For such reasons alone a cancellation of the shares in dispute may be required. Compare *Melson v. Michlin, supra.*

On notice, on order denying plaintiff's motion for summary judgment may be submitted.