# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00549-CV

---

**Craig Coates, Appellant**

**v.**

**Parnassus Systems, Inc. d/b/a Stormwater Research Group; Jeffrey Caudill;
Mark Bohrer; Michael Mixon; and Rene Adame, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. 98-10341, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

---

Appellant Craig Coates appeals the trial court's grant of summary judgment in favor of appellees, Parnassus Systems, Inc. d/b/a Stormwater Research Group, Jeffrey Caudill, Mark Bohrer, Michael Mixon, and Rene Adame.[1] Coates raises two issues on appeal. We will reverse the summary judgment and remand the cause to the district court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Parnassus was incorporated on August 26, 1993, pursuant to agreements reached by Coates and the appellees in July and August of that year. Coates, Caudill, Bohrer, and Mixon orally agreed that they would be equal owners of Parnassus. On August 23, 1993, they entered into a written agreement to sell forty-nine percent of Parnassus's stock to Rene Adame and Marcus

---

[1] For clarity, we will refer to the corporation as "Parnassus" and the appellees as "Stormwater."

Mireles.[2]  In the articles of incorporation, Coates was named as the registered agent for Parnassus and as one of its initial directors.  On October 1, 1993, Coates attended the first meeting of the Parnassus shareholders and signed the minutes.  Coates ceased his day-to-day involvement in the company's business activities in late December 1994 because of Parnassus's limited financial success.

Coates alleges that from 1995 through 1998, Parnassus failed to issue stock certificates, provide minutes to shareholder and director meetings, or to provide an accounting of share ownership, despite Coates's requests that Parnassus do so.  In response to these requests, Parnassus informed Coates in May 1998 that he was not a record owner of any Parnassus stock.  In September 1998, Coates filed suit against Stormwater.  In his petition, Coates alleges causes of action for fraud, civil conspiracy, breach of fiduciary duty, shareholder oppression, declaration of a constructive trust, and declaratory relief regarding Coates's status as a shareholder in Parnassus.  All of his causes of action necessarily rely upon Coates being a shareholder in Parnassus.  In response, Stormwater moved for summary judgment on all of Coates's claims on multiple grounds.

The trial court granted summary judgment in favor of Stormwater on all of Coates's claims.  The court held that Coates's consideration for his ownership interest was insufficient as a matter of law because part of Coates's consideration was the performance of future services.  Finding the case of *United Steel Industries, Inc. v. Manhart*, 405 S.W.2d 231 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e.), controlling, the court further stated that where consideration for an ownership interest in a corporation consists of both services rendered and future services to be performed, any ownership interest is void if there is no apportionment of value between the past and future services.

---

[2] As it turned out, however, Mireles never obtained any of Parnassus's stock.

Implicit in the trial court's order is that article XII, section 6 of the Texas Constitution (repealed 1993) and article 2.16 of the Texas Business Corporations Act, as it existed in August 1993, provide the controlling law in this case.[3]

On appeal, Coates raises two issues. In his first issue, Coates argues that the restrictions on consideration found in now-repealed article XII, section 6 of the Texas Constitution are not applicable to the validity of the consideration of Coates's stock in Parnassus. In his second issue, Coates argues that even if this provision applies, there is an issue of material fact as to whether the consideration Coates was to provide for his ownership interest included a promise to provide services in the future.

## DISCUSSION

### Standard of Review

We review the trial court's summary judgment decision de novo. *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). When the district court expressly states the grounds on which summary judgment was granted, we must consider the grounds on which the district court ruled. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).

A summary judgment shall be rendered if the movant establishes that the evidence properly before the court indicates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c); *see also Rodriguez*

---

[3] On appeal, no party has asked that we examine any alternative grounds presented in the motion for summary judgment.

3

*v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex. 1989); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that would preclude summary judgment. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* at 549.

***Effect of Constitutional Restriction***

When Parnassus was formed in August 1993, the Texas Constitution provided that "[n]o corporation shall issue stock . . . except for money paid, labor done or property actually received, and all fictitious increase of stock . . . shall be void." Tex. Const. art. XII, § 6 (repealed Nov. 2, 1993). Although article XII, section 6 was repealed shortly after the formation of Parnassus, we must determine how this provision affects Coates's claim of stock ownership in Parnassus. We have not found any Texas cases addressing the critical time for determining the validity of consideration. The Delaware Constitution, however, contains a provision virtually identical to article XII, section 6, and we find the rule applied under Delaware law to be persuasive. *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) (noting that courts interpreting the Texas Constitution may consider "the interpretations of analogous constitutional provisions by other jurisdictions"). Under Delaware law, the "critical time for determining whether lawful consideration exists is the date the shares were actually issued." *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 574 (D. Del. 1993) (applying Delaware law); *see also Highlights for Children, Inc. v. Crown*, 227 A.2d 118, 120-21 (Del. Ch. 1966) (noting that in a previous case the Delaware Supreme Court looked to the date the shares issued for determining whether valid consideration was given).

Coates argues that since no stock certificates were ever issued or delivered to him prior to November 2, 1993, his ownership interest in Parnassus did not arise until after the repeal of the restriction on promises of futures services as consideration for issuance of stock. Were Coates correct as a matter of law that stock does not issue until a certificate is produced, Coates would effectively argue himself out of court because it is undisputed that no certificates were ever issued to Coates at any time. However, Coates's argument is incorrect. Over eighty years ago, the Commission of Appeals made clear that the issuance of a stock certificate is not required to give rise to stock ownership.

> In order to bring into existence the relationship of stockholder to a corporation there must be some sort of contract in which the subscriber obtains the right to demand and exercise the privileges of a shareholder. But the issuance of a certificate is not essential in order to create the relation of shareholder, which may arise by reason of the contract duly made, and to vest in the subscriber the privileges attendant upon the relationship of stockholder which he may exercise and enjoy with the consent of the company. The certificate is not the stock, but is only evidence in the hands of the shareholder that the corporation recognizes him as owning an interest therein. The certificate is not necessary to the existence of the stock, nor to the transfer of it by the shareholder.[4]

*Turner v. Cattleman's Trust Co. of Ft. Worth*, 215 S.W. 831, 832-33 (Tex. Comm'n App. 1919, judgm't adopted) (citations omitted). While the record is not entirely clear as to the exact date the shareholder relationship between Coates and Parnassus arose (if at all), it certainly arose no later than

---

[4] The supreme court has stated that opinions of the Commission where only the judgment was adopted "are not binding on the [Supreme] court in the same sense that the approved and adopted opinions are, but they are given great weight by us, and the courts of civil appeals and all lower courts should feel constrained to follow them, until they are overruled by the Supreme Court." *National Bank of Commerce v. Williams*, 84 S.W.2d 691, 692 (Tex. 1935).

October 1, 1993, when the first shareholder meeting was held. The minutes of this meeting were signed by Coates (among others). Thus, at that time, a promise of future services was invalid consideration for the issuance of stock.[5]

A promise of future services alone is invalid consideration, but may stock be issued in return for both services performed in the past *and* services to be performed in the future? Stormwater argues that the inability to allocate the part of the stock which was issued for past services and that which was issued for future services results in an invalidation of all issued shares, as announced in *Manhart*, 405 S.W.2d at 233. Coates argues that *Manhart* is inapplicable in this case. We respectfully decline to adopt the court's decision in *Manhart*.

The allocation rule expressed in *Manhart* comes directly from a Fifth Circuit opinion that purports to interpret Texas law. *See id.* (quoting *Champion v. Commissioner*, 303 F.2d 887, 891 (5th Cir. 1962)). *Manhart* provides no other support or analysis for the rule it adopted from *Champion*. We find the Fifth Circuit's decision to be unpersuasive. Under the facts of *Champion* there was no need for the court to allocate the part of the stock that issued for past services and the

---

[5] The Court notes that both parties proceed on the assumption that stock issued in return for invalid consideration would necessarily render the stock void. Since the parties have not contested this issue on appeal we do not address whether the parties are correct in their assumption since it is not necessary to the resolution of this appeal. However, we observe that there is precedent suggesting that such stock is not necessarily void in all situations, but may only be voidable. *See Washer v. Smyer*, 211 S.W. 985, 987 (Tex. 1919); *McCarty v. Langdeau*, 337 S.W.2d 407, 410-11 (Tex. Civ. App.—Austin 1960, writ ref'd n.r.e.). We express no view at this time, and specifically reserve the question, as to whether this case presents one of those situations.

6

part that issued for future services because Champion had provided no past services. *Champion*, 303 F.2d at 891. The allocation rule announced was strictly dicta.[6]

The allocation rule, while perhaps appropriate under Delaware law, is inappropriate in this case. In Delaware, the harshness of the allocation rule is ameliorated by two other principles of Delaware law. First, the failure of consideration renders stock voidable, not void. *Belle Isle Corp. v. MacBean*, 61 A.2d 699, 705 (Del. Ch. 1948); *Scully v. Automobile Fin. Co.*, 109 A. 49, 52-53 (Del. Ch. 1920). Second, a Delaware court may as a matter of equity allow a party to retain the shares upon payment rather than have them canceled at the time the court rules the original consideration to be invalid. *Maclary v. Pleasant Hills, Inc.*, 109 A.2d 830, 835 (Del. Ch. 1954). Thus, the allocation rule under Delaware law does not lead to the result mandated by the *Manhart* rule that because part of the consideration for stock is invalid, then all of the stock issued to the shareholder is absolutely void. But assuming that a violation of article XII, section 6 of the Texas Constitution renders stock void, the allocation rule would cause this harsh result. Moreover, when the promised consideration consists of both past and future services, it becomes impossible in most circumstances to allocate. We therefore believe that such a result is inappropriate.

The proper rule is that all stock issued in consideration for a combination of past and future services is presumed valid unless the party challenging the stock's validity can allocate the part of the stock that was issued for past services and the part issued for future services. This rule is

---

[6] Further, the court in *Champion* applied the allocation rule solely on the authority of dicta found in a Delaware Supreme Court decision. 303 F.2d at 891 (citing *Triplex Shoe Co. v. Rice & Hutchins, Inc.*, 152 A. 342, 349 (Del. 1930), in which the court had already found the stock at issue to be invalid on other grounds). Notably, the allocation rule in *Triplex* has never been followed in cases other than *Champion* and *Manhart*, even in Delaware.

consistent both with article XII, section 6, as well as with the relevant statutory provisions. Prior to August 26, 1991, the Texas Business Corporation Act provided that the promise of future services could not constitute part payment for shares of a corporation. *See* Texas Business Corporation Act, 54th Leg., R.S., Ch. 64, art. 2.16, 1955 Tex. Gen. Laws 239, 250 (since amended) (current version at Tex. Bus. Corp. Act Ann. art. 2.16 (West Supp. 2002)). In 1991, this provision was deleted. *See* Act of May 25, 1991, 72nd Leg., R.S., Ch. 901, § 4, 1991 Tex. Gen. Laws 3161, 3164. When the Legislature adopts an amendment, it is presumed that the Legislature intended to make a change in the existing law and courts should endeavor to give effect to the amendment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 681 (Tex. 1979); *Texas Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 285 (Tex. App.—Austin 2000, pet. denied).

By deleting the prohibition on part payment with future services, the Legislature intended to allow such agreements. However, until the repeal of article XII, section 6 on November 2, 1993, the effect of the statutory amendment was constrained by the constitutional provision. *See* Tex. Bus. Corp. Act Ann. art. 2.16, cmt. of bar comm. (1996) (West Supp. 2002). We believe, however, that the constitutional provision of its own force does not prohibit part payment of stock with promises of future services. Article XII, section 6 states that no corporation shall issue stock "except for money paid, labor done or property received." A situation where the consideration consists of past and future services does not violate this provision because the stock is issued in part for "labor done." While the constitutional provision limits the type of consideration that is valid, it does not prohibit the parties from agreeing to other forms of consideration so long as some valid consideration is provided.

For example, if the alleged agreement in the instant case provided that Coates was to receive his stock for services rendered prior to August 26, 1993, there would be no question that the consideration for the stock was valid. Why then should the fact that some additional consideration, albeit invalid was *also* provided, void the stock? To put it in other terms, if a corporation agrees to issue stock in return for some amount of valid consideration, the fact that additional invalid consideration is agreed upon does not cancel out the valid consideration. Thus, when stock has issued for a combination of past and future services, the court will presume that some valid consideration supports each share of stock as courts will not delve into the adequacy of the consideration. The partial payment for the stock with invalid consideration will not void the issued shares. However, if the challenging party can demonstrate that some portion of the shares was issued exclusively in return for future services, then those shares are void.[7]

Moreover, in the absence of a written agreement and on the state of the record, we cannot say that Stormwater conclusively proved as a matter of law that future services by Coates were part of the agreement entered into by Coates, Boehrer, Caudill, and Mixon in July 1993. Coates's deposition testimony is ambiguous at best as to the consideration that he was required to provide under the subscription agreement. Some of Coates's testimony appears to state that his ownership interest in the corporation was contingent upon his promise to provide services in the future. Other aspects of his testimony, however, suggest that neither Coates nor the other

---

[7] For example, assume a shareholder receives one hundred shares of stock in ABC Corp. If a party challenging the shares can show that thirty-five shares were issued for past services and the other sixty-five shares were issued in consideration for a promise of future services, then the sixty-five shares issued for future services would be invalid. If the challenging party cannot make such a showing, however, all one hundred shares would be valid.

shareholders had to promise to work for Parnassus in the future in return for the stock received under the oral agreement. Rather, some of Coates's testimony suggests that the obligation to work for Parnassus derived solely from the shareholder's interest that Parnassus succeed and generate income for the shareholders.

Stormwater relies on Coates's responses to its request for admissions to establish that future services were part of the agreed-to consideration for the stock. "Any matter established by way of request for admissions is conclusively established as to the party making the admission, unless on motion, it is withdrawn or amended with the permission of the court." *State v. Carillo*, 885 S.W.2d 212, 214 (Tex. App.—San Antonio 1994, no writ). Coates admitted that he "performed services for Parnassus in September, 1993 in consideration for [his] ownership interest in Parnassus." Coates made identical admissions regarding services he performed in October, November, and December of that year.

These admissions only establish that Coates believed that the services he provided after the shares were issued were performed in return for the shares. They do not establish, however, that a promise to perform services in the future was part of the agreement. Coates's admission that he believed that his services from September 1993 were performed in return for the stock may be evidence of whether a promise of future services was part of the agreement. The admission does not state that a promise of future services was part of the agreement and therefore does not conclusively establish the matter. We conclude that there is a genuine issue of material fact as to whether future services formed part of the consideration provided by Coates in return for shares of Parnassus. We also conclude that the provisions of article XII, section 6 of the constitution apply to Coates's shares

10

in Parnassus. However, we expressly reject the allocation rule adopted in *Manhart* and hold that the mix of valid and invalid consideration does not void the issuance of all the shares issued to Coates.[8]

## CONCLUSION

We reverse the summary judgment in favor of Stormwater and remand the cause to the trial court for further proceedings consistent with this opinion.

_

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Reversed and Remanded

Filed:   April 11, 2002

Do Not Publish

---

[8] Since reversal of summary judgment is appropriate based on Coates's first issue on appeal, we do not address Coates's second issue.